251 F.Supp. 650 (1966)
The INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW-AFL-CIO) and Its Local Union No. 459, Plaintiff,
v.
DEFIANCE INDUSTRIES, INC., Defendant.
Civ. No. C64-106.
United States District Court N. D. Ohio, W. D.
March 10, 1966.
*651 Ralph Rudd, Rudd, Ober & Miller, Cleveland, Ohio, for plaintiff.
Robert Gosline, Shumaker, Loop & Kendrick, Toledo, Ohio, for defendant.
YOUNG, District Judge:
In this contract action over which the Court obtains jurisdiction by virtue of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, plaintiff has moved for an order staying this proceeding and directing the defendant to proceed to arbitration pursuant to the provisions of a Pension Plan Agreement entered into September 1, 1955. The last extension of that agreement includes a termination provision which reads:
"2. As amended hereby, said Pension Agreement, entered into the first day of September, 1955, shall continue in full force and effect until the 18th day of November, 1962, and from year to year thereafter unless by notice given not less than sixty (60) days prior to November 18, 1962, either party notifies the other of its desire to terminate or amend the Agreement."
On April 24, 1961 the defendant employer closed its Muncie, Indiana plant. An exchange of letters between company and union gave rise to the dispute which forms the basis of this lawsuit. The company took the position that the plant shutdown terminated the pension agreement. The union rejected this assertion, relying on the termination provision quoted above. Suit was filed by the union to compel payment by the company for the amounts required by the agreement to amortize past service liability. The company had paid such sums from September 1, 1955 until April 24, 1961, but ceased all contributions on the latter date. Thus, at the commencement of this lawsuit the issue for decision by the Court was a simple contract question. Since that time a new dispute has arisen which, according to the union, requires that this action be stayed pending the arbitration of that dispute. The company resists arbitration, maintaining that all matters incident to this lawsuit must be decided by the Court.
The new dispute arose in the following manner. On November 3, 1964 Guy E. Plymale, a union member who had earned *652 service credits through employment by the defendant, applied to the Joint Board of Administration of the Pension Agreement for early retirement under the agreement. Charles H. Cromer, a personnel director of the defendant and a member of the joint board, rejected Mr. Plymale's application on the ground that he had not complied with a procedural requirement of the agreement. The union members of the board disagreed with Mr. Cromer's interpretation of the agreement and requested that an impartial chairman be elected according to the provisions of the agreement in order to break the deadlock.
The composition of the joint board is defined by Article III, paragraph one, of the agreement as follows:
"1. The Plan shall be administered by a Board of Administration, two (2) members of which shall be appointed by the Company (hereinafter referred to as the Company members), and two (2) members of which shall be appointed by the Union (hereinafter referred to as the Union members). These members shall serve without compensation from the Trust Fund. An impartial chairman shall be selected by mutual agreement of the Company and the Union members of the Board, but shall vote at meetings of the Board only in the event of a deadlock."
The powers of the board are set out in paragraph 3 of Article III, part of which follows:
"3. The Board shall have such powers as are necessary for proper administration of the Plan, including the following:
"* * * a. To prescribe procedure to be followed by employees in filing applications for benefits, and for the furnishing of evidence necessary to establish employees' rights to such benefits;
"* * * b. To make determinations as to the rights of any employee applying for or receiving retirement benefits, and to afford any such individual dissatisfied with any such determination the right to a hearing thereon;"
The issues before the Court are (1) whether the foregoing contract provisions constitute an arbitration clause, and (2) if so, whether the obligation to arbitrate was still binding at the time of the dispute over Mr. Plymale's eligibility. Resolution of these issues in the union's favor will necessarily result in an order directing arbitration for there is no question but that the eligibility dispute constitutes an arbitrable question. Also not in controversy is the relevancy of the eligibility dispute to plaintiff's claim for relief. In the event the company prevails in the dispute over Mr. Plymale's eligibility (and others similarly situated) its potential liability for past service credits would be greatly reduced. In fact, the entire lawsuit may be rendered moot.

I.
Since arbitration is a matter of contract it is the task of the Court to determine the intent of the parties as manifested in their agreement. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Local Union No. 998, Intern. Union, United Auto. etc. v. B & T Metals Co., 315 F.2d 432 (6th Cir. 1963). The company strongly urges that paragraph one of Article III, quoted above, cannot be read to require arbitration. The omission of an express provision excluding the parties from court proceedings and rendering the vote of the impartial chairman final is thought to show a lack of intent to create an arbitration procedure. The Court cannot agree.
The language of Article III is mandatory: "The Plan shall be administered by a Board * * * An impartial chairman shall be selected * * * but shall vote at meetings of the Board only in the event of deadlock." Under the company's interpretation a non-final, nonbinding vote of the impartial chairman *653 would serve no meaningful purpose, but would only delay an ultimate court proceeding. In light of the obvious advantages (economy, expedition, and finality) which arbitration brings to stalemates in the day-to-day administration of a pension plan, it would require a strained construction of the provisions of this contract for the Court to find lacking an intent to create an arbitration procedure.
In Smith v. Union Carbide Corp., 350 F.2d 258 (6th Cir. 1965), the Court of Appeals for the Sixth Circuit had occasion to treat an arbitration provision included in a pension agreement in which any dispute over the disability of a claimant was to be settled by a doctor appointed by each party. In the event of disagreement between the two doctors, a third doctor was to be appointed and in consultation with the other doctors decide the matter. Plaintiff in that case presented the claim (as does defendant company here) "that the procedure contemplated by the parties in the contract does not possess the finality of the characteristic arbitration procedures under the Labor Management Relations Act." Id. at 260. The Court made short shrift of this argument.
The company would distinguish the provision in Smith by pointing to its broadness:
"4. If any dispute shall arise between the Company and any bargaining-unit employee as to whether such employee is, or continues to be totally and permanently disabled within the meaning of the Pension Plan, such dispute shall be resolved as follows:" Id. at 259, n. 1.
But the provision before the Court is no less broad. The Smith clause covers "any dispute" in a specified and narrow area, namely, disability claims. The clause in the instant agreement empowers the impartial chairman to break any deadlock in the board. And the board's powers are carefully defined. Included are powers of administration, accompanied by powers of contract interpretation necessary in the exercise of those administrative powers. Not included is the power to interpret other provisions of the contract, such as the obligation of the company to make payments. In sum, the Court sees no difference, within the present context, between a provision which empowers a panel of doctors to settle any dispute regarding disability claims and a provision which empowers a chairman to break deadlocks which occur within a board which can exercise only defined and limited powers. In both cases the parties to the collective bargaining agreement have manifested an intent to forego the courts and settle their disputes by means of a private tribunal. It need hardly be added that the absence of the word "arbitration" is of no moment. General Drivers Warehousemen and Helpers, etc. v. Riss & Co., 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

II.
The second issue presented by this motion is more difficult to resolve. Having found the existence of an arbitration provision which governs the eligibility dispute, there remains the problem of whether that provision was in effect at the time of the dispute.
It is generally recognized that the axiom of contract law that parties to an agreement are relieved of their mutual obligations upon completion of the contract is not fully applicable to collective bargaining agreements. For instance, severance pay,[1] vacation pay,[2] and pension rights[3] may survive the collective bargaining agreement. The employees are deemed to have earned deferred *654 compensation during the term of the contract. As a result, the company's obligation of payment often extends well beyond the termination date.
An analogous situation is not before the Court. However, the foregoing does point up the fact that in this specialized area of contract law where a continuing relationship is involved, meaningful analysis requires the dissection of a contract into the rights and obligations which arise under it. In the present contract one of the employer's primary obligations was to pay to the trust fund certain sums in conformance with the requirements of Article IV, paragraph one.[4] The point in time at which that obligation terminated is the disputed question which gave rise to this lawsuit. Another obligation imposed by the agreement, binding on both parties, is that of administering the plan, i. e., receiving and approving or rejecting applications for retirement and authorizing the dispersement of funds.
The termination of the aforementioned two obligations, one unilateral and the other bilateral, need not necessarily occur at the same point in time. It is conceded that certain pension rights survive the agreement. To the Court it appears reasonable to assume that the scheme which the parties have by mutual consent provided for the fulfillment of those rights should also survive.
The conduct of the parties since the closing of the employer's plant confirms this interpretation. The joint board has continued to function. According to plaintiff's brief, thirty-seven applications for benefits have been received by the board and acted upon. Although the foregoing is not verified by affidavit, exhibits attached to plaintiff's request for admission of facts indicate that the board authorized payments to at least eight applicants in 1962, four applicants in 1963, and the same number in 1964. The last authorization was made on October 28, 1964. All of these actions occurred subsequent to the plant closing. And all of them were necessarily undertaken under the authority and pursuant to the applicable provisions of the pension agreement. Thus, the parties themselves have demonstrated by their conduct the existence of a mutual duty to administer the pension agreement at the time the eligibility dispute arose. The final step in that administration is submittal of disputed issues to a neutral chairman.
For the foregoing reasons the union's motion for an order directing the defendant to arbitrate the matter of the eligibility dispute which has arisen since the institution of this lawsuit will be allowed. And because it appears that the arbitrable dispute is not only relevant to this lawsuit but a determination in the company's favor may render this suit without purpose, the union's further motion for a stay will also be granted.
NOTES
[1] In re Brooklyn Eagle, Inc., 32 L.A. 156 (1959) (W. W. Wirtz, arbitrator).
[2] In re Public Ledger, Inc., 161 F.2d 762 (3d Cir. 1947).
[3] Vallejo v. American R. Co. of Porto Rico, 188 F.2d 513 (1st Cir. 1951).
[4] "1. The Company shall pay to the Trustee, for the purposes of the Plan, not less frequently than quarterly, such sums as will fund future service credits as earned and amortize, on a level funding basis over a period of 30 years, the liabilities attributable to past service."