**BUILDING SERVICE EMPLOYEES PENSION TRUST, Plaintiff,**

v.

**HORSEMEN'S QUARTER HORSE RACING ASSOCIATION, Quarter Horse Racing, Inc., a California corporation, dba Horsemen's Quarter Horse Racing Association, Hollywood Park, Inc., a Delaware corporation dba Hollywood Turf Club, Los Alamitos Race Course, a California corporation, Los Angeles County Fair Association, Los Angeles Turf Club, Oak Tree Racing Association, Southern California Racing Association, a California corporation, Windcorp, a Delaware corporation dba Western Harness Racing, Defendants.**

No. C–81–0569–CAL.

United States District Court, N.D. California.

April 8, 1985.

Elizabeth G. Leavy, Carroll, Burdick & McDonough, San Francisco, Cal., for plaintiff.

Stephen P. Pepe, O'Melveny & Myers, Los Angeles, Cal., Edward W. Rosston, Jonathan C. Dickey, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants.

## OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

This case is before the court on cross motions for summary judgment by all parties. The case has been pending for four years, and the parties now agree that discovery is complete, that there are no genuine issues of material fact, and that the issues are ones of law which should be resolved by summary judgment.

The court has reviewed all of the moving and opposing papers and the record, and now orders that summary judgment be entered for plaintiff and against defendants.

### I.

Plaintiff Building Service Employees Pension Trust ("Trust") is an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. §§ 1001–1461. Defendants are operators of racetracks.

In 1976, defendants entered into collective bargaining agreements with the Service Employees International Union ("SEIU") Locals 193, 280, and 399. Those collective bargaining agreements incorporated a Pension Plan and Trust Indenture

by reference. Under those agreements, defendants were obligated to make contributions to the Trust on behalf of employees who were members of the three SEIU locals.

In 1979, the collective bargaining agreements expired. Members of all three locals went on strike, but Teamsters union members and other non-SEIU union members crossed the picket lines. During the third week of the strike, most of the SEIU Local 193 members signed cards authorizing Teamsters Local 495 to represent them. Subsequently, defendants recognized Teamsters Local 495 as the bargaining agent for those employees. SEIU Locals 280 and 399 then settled their strike, and new collective bargaining agreements were negotiated for their members and for those employees then represented by Teamsters Local 495.

The Pension and Trust Indenture were incorporated into the new agreements of SEIU Locals 280 and 399. Since the plan and indenture applied to unions affiliated with SEIU only, it was not incorporated into the agreement between defendants and Teamsters Local 495. Thus, defendants no longer made contributions to the Trust on behalf of former SEIU Local 193 members.

Shortly thereafter, the Trust received numerous requests for early retirement benefits from the Trust by former SEIU Local 193 members. Under the Pension Plan, a participating employee is entitled to request early retirement so that he may begin receiving monthly pension benefits before age sixty-five; § 8.01. Although benefits are usually paid to fully-retired employees only, the plan recognizes that in certain situations it could be beneficial to all parties to have a retired employee return to work on a temporary basis. The Pension Plan therefore expressly authorizes the reemployment of a retired employee who is receiving pension benefits from the Trust; § 12.02. However, restrictions are placed on the right of a retired employee to return to work. Two such provisions of the Pension Plan are relevant

here. First, the fact that a retired employee has returned to work is to be called to the attention of the Trust administrators immediately; § 12.02(b). Second, if a retired employee works for a participating employer for more than five hundred hours per year, he forfeits a certain percentage of pension benefits; § 12.02(c).

Because of the number of requests for early retirement benefits by former SEIU Local 193 members, the Trust administrators apparently suspected that many early retirement applicants were working for defendants as members of Teamsters Local 495. In order to enforce Pension Plan §§ 12.02(b) and 12.02(c), the Trust requested that defendants provide the employment records of all former SEIU Local 193 members who had taken early retirement, but who had returned to work for defendants as members of Teamsters Local 495.

The Trust's request for information was based upon Trust Indenture § 5.12. That section provides in part that "[t]he Pension Plan Trustees may require of any Employer ... any reasonable information, data and documents relevant and suitable for the purposes of the administration of the Trust and Pension Plan."

The defendants declined to provide the information.

## II.

The Trust commenced this action in 1981. Pursuant to 29 U.S.C. § 1059(a)(1), the Trust seeks to compel defendants to produce the disputed employment records. It is important to note that this action seeks only the production of records and information. It does not seek to cancel or forfeit any pension benefits, although the Trust might attempt such actions after receiving the information which it seeks here. Defendants filed various counterclaims.

In 1983, the parties filed cross-motions for summary judgment with respect to the second amended complaint and the defendants' counterclaims. In 1984, Judge Robert P. Aguilar granted the Trust's motion for summary judgment on the defendants'

counterclaims, and denied defendants' motion for summary judgment. Following Judge Aguilar's order, discovery was completed. The parties now cross move for summary judgment on the complaint and contend that no genuine issues of material fact remain.

## III.

### A.

■ In cases involving collective bargaining agreements and trust agreements, standard rules of contract interpretation are not necessarily applicable. *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund,* 701 F.2d 1301, 1304 (9th Cir. 1983). Instead, a court must usually confine its analysis to the written terms of such agreements. *See Kemmis v. McGoldrick,* 706 F.2d 993, 996 (9th Cir.1983). Since construction of collective bargaining agreements and trust agreements generally involve questions of law, *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 698 F.2d 802, 805 (6th Cir.1983), *cert. granted,* — U.S. ——, 104 S.Ct. 3531, 82 L.Ed.2d 837 (1984), summary judgment is often appropriate.

### B.

The right of the Trust to obtain information is defined in section 5.12 of the Trust Indenture. That section in part authorizes the Trustees to "require of any Employer ... any reasonable information, data and documents relevant and suitable for the purposes of the administration of the Trust and Pension Plan."

■ Defendants are "Employers" within the meaning of the Pension Plan and Trust Indenture. And the stated objective of the trust in seeking the information is to determine whether certain trust beneficiaries are entitled to their claimed early retirement benefits under section 12.02 of the plan.

The actions of the Trust are therefore prima facie for a valid purpose "of the administration of the Trust and Pension Plan," and are consistent with the purposes and policies of ERISA.

### C.

Defendants oppose the Trusts' request for information on several grounds.

■ Defendants' underlying argument is that this action is really harassment by SEIU and the Trust with respect to the former members of its Local 193 who are now members of the Teamsters Union, and is part of the labor discord which began in 1979. Certain statements about that background are contained in the record. But the court must nevertheless enforce the rights and duties between the parties, even if this action is simply one battle in a larger war.

The court therefore now considers the specific arguments of defendants in opposition to the Trust's attempt to enforce its rights and defendants' duties.

#### 1.

Defendants argue that they are not obliged to provide the information because the collective bargaining agreement with SEIU Local 193 expired in 1979. The Trust replies that the duty to provide the information survives the expiration of the collective bargaining agreement, because the information pertains to employees who were covered by the collective bargaining agreement before its expiration, and on whose behalf defendants made contributions into the Trust.

■ No court has addressed the issue of whether the duty to provide employment records for trust administration purposes survives the expiration of the collective bargaining agreement. However, courts have held that an arbitration clause in a collective bargaining agreement or trust agreement will be applied to pension benefit disputes which arise after the expiration of the particular agreement. *Federated Metals Corp. v. United Steelworkers,* 648 F.2d 856, 863 (3d Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). *See also Nolde Brothers, Inc. v.*

*Bakery & Confectionery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); *International Union v. Defiance Industries, Inc.,* 251 F.Supp. 650 (N.D.Ohio 1966).

The policy underlying the survival of the arbitration procedures is the federal policy favoring arbitration as a method for resolving labor disputes. *Federated Metals,* 648 F.2d at 859. This court is of the opinion that the public policies which underlay Congress' enactment of ERISA are equally valid bases for survival of the duty to provide relevant information to the Trust.

The disputed employment records in this case concern the rights of former SEIU Local 193 members to pension benefits. Since those rights arose under the collective bargaining agreement and under the terms of the Trust Indenture and Pension Plan, the reasoning of the arbitration cases should apply here. Defendants' duty to provide information should not end upon the expiration of the collective bargaining agreement.

Defendants' argument that the duty to provide information expired with the collective bargaining agreement is based upon *Central States, Southeast and Southwest Areas Pension Fund v. CRST, Inc.,* 641 F.2d 616 (8th Cir.1981), *overruled on other grounds, Robbins v. Prosser's Moving and Storage Co.,* 700 F.2d 433 (8th Cir.1983) (en banc), and *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 698 F.2d 802 (6th Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 3531, 82 L.Ed.2d 837 (1984). However, those cases are distinguishable. There the pension funds sought records of employees who were *never* covered by the collective bargaining agreements. The employers had made no contributions to the funds on behalf of those employees, and the pension funds did not pay benefits to those employees. In the present case, the former SEIU Local 193 members were covered by the collective bargaining agreement, defendants did make contributions on their behalf, and the former SEIU Local 193 members sought early retirement and

are currently receiving pension benefits from the Trust.

█ Further, the language of the *present* collective bargaining agreements between defendants and SEIU Locals 280 and 399 obligate defendants to produce the information concerning the former Local 193 members. As stated the Trust's claim to the employment records is based upon Trust Indenture § 5.12 which provides that the Trustees may request information "of any Employer." Under the Trust Indenture, the term "Employer" includes employers of members of any SEIU Locals who make payments into the Trust pursuant to *any* collective bargaining agreements between such employers and SEIU. Trust Indenture § 2.01(c). Defendants are still parties to collective bargaining agreements with SEIU Locals 280 and 399, and defendants contribute to the Trust on behalf of the members of those locals. Defendants are thus "Employers" within section 2.01(c) and the Trust has the right to seek information from them under section 5.12. Therefore, the current collective bargaining agreements between defendants and other SEIU locals oblige defendants to produce the employment records, even though the collective bargaining agreement with SEIU Local 193 has expired.

This position is supported by *Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650 (9th Cir.1981). That decision was based upon an interpretation of the term "participating employer" in a pension plan. The Ninth Circuit concluded that the definition included any employer which contributed to the trust, even though the employer did not contribute to the trust on behalf of the claimant but did so on behalf of the other employees who were members of the union. *Id.* at 656.

2.

Defendants argue that the Trust's request for the employment records is not reasonable, because the objective which the Trust is pursuing is not a permissible one under the language of the Pension Plan and Trust Indenture. This argument is

based upon defendants' interpretation of the language of the instruments.

Defendants correctly note that under section 5.12, the Trust can seek information only for purposes of administration of the Trust and Pension Plan. The Trust's stated purpose is to enforce section 12.02(c). But, defendants argue, section 12.02(c) only applies to persons who are "employees" as defined in the trust instruments. Defendants then point to the definition of "Employee" in Trust Indenture § 2.01(d) as a person "who performs work covered by any of the Collective Bargaining Agreements and for whom the Employer is obligated to make payments to the Trust. . . ." Defendants then correctly note that they are not now required to make payments to the Trust for former SEIU Local 193 employees. Defendants' construction of the language is a possible interpretation of the trust instruments.

However, that interpretation conflicts with other equally valid interpretations. One is that the status of an "Employee" is determined as of the time when contributions are made on behalf of that employee to the Trust. Another is that the word "Employee" is capitalized in the definition and in some of the text. But it is not capitalized in the language of section 12.02(c), and hence the term as used there might have a broader meaning than the capitalized definition. Defendants' interpretation also appears to conflict with the definition of "Employer" noted above; that is an "Employer" includes one who is now contributing to the Trust under collective bargaining agreements with other SEIU Locals. Finally, the court notes that the language of section 12.02(c) refers to an "employee . . . for participating Employers." The definition of "participating Employer" includes these defendants.

■ In view of these interrelated definitions and provisions, the court believes that they should be interpreted to give effect to the purposes of ERISA and the trust agreements as a whole. The purposes of both are to protect the pension benefits of those individuals who are enti-

tled to them. The objective of the Trust's power under section 5.12 is to enable the Trustees to have adequate information to perform their fiduciary duties in collecting, administering, and paying out benefits. That would include seeing if benefits are being paid to persons who are not entitled to them. In light of these purposes and objectives of ERISA and the trust instruments, the court believes that the Trust's interpretation is the more reasonable and that defendants' narrower interpretation should be rejected.

3.

■ Defendants argue that the Trust's rights should not be enforced here because the Trust has "selectively enforced" the reporting provisions of section 5.12. The argument is apparently that such selective enforcement demonstrates that the Trust's requests for the disputed employment records are arbitrary and capricious.

Defendants rely upon one case in support of this argument. In *Winpisinger v. Aurora Corp.*, 456 F.Supp. 559 (N.D.Ohio 1978), the court held that the provision of a pension plan authorizing the cancellation of employees' past service credits could not be selectively enforced. *Id.* at 568 n. 7. But that case is not applicable here. The Trust is not attempting to cancel any pension benefits in this case. It is seeking in this action only to obtain information for the purpose of making pension decisions. Since the Trust is here inquiring into the eligibility of a large group of former union members to receive early retirement benefits, it is highly questionable whether the holding in *Winpisinger* would apply even to an attempt by the Trust to cutoff pension benefits of former SEIU Local 193 members. Certainly, that holding does not apply to the present action, where the only relief sought is the production of employment records.

4.

■ Defendants finally argue that the Trust's eventual enforcement of section 12.02(c) would be improper under ERISA. As noted above, and in Judge Aguilar's

earlier opinion, the actual enforcement of section 12.02(c) is not an issue in this case. The Trust does not here seek to cancel pension benefits, but only seeks information on which it will at some time in the future make its decisions regarding pension benefits.

The enforcement of section 12.02(c) will become an issue only if at some time in the future, the Trust determines that certain pension benefits should be terminated. That would then become a dispute primarily between the Trust and certain of its beneficiaries. This court expresses no opinion on the law or on the possible outcome of such later proceedings.

## IV.

Under 29 U.S.C. § 1132(g) this court may in its discretion allow reasonable attorneys' fees and costs to either party. The factors for an award of attorneys' fees have been defined by the Ninth Circuit in *Hummell v. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980). Those factors include: the degree of culpability or bad faith of any party; the ability of the respective parties to satisfy an award of fees; whether an award of fees would deter others from acting in similar circumstances; whether the requesting parties sought to benefit all the beneficiaries or resolve a significant legal question regarding ERISA; and the relative merits of the parties' positions. *Id.* at 453.

Applying those standards, the court awards to plaintiff its reasonable attorneys' fees in defending defendants' counterclaims, which were resolved against defendants as a matter of law by Judge Aguilar. The opinion of Judge Aguilar does not directly discuss the issue of attorneys' fees, but the reasoning stated there shows that the above factors were met.

The court exercises its discretion not to award attorneys' fees to plaintiff for the prosecution of the main action. While this court does grant summary judgment to plaintiff, the language of the Pension Plan and Trust Indenture which defined the parties' rights and duties is convoluted and perhaps conflicting. Any degree of culpability in the somewhat dilatory prosecution of this action appears to be equally divided. And because of the peculiar nature of the underlying facts (that is, employees claiming pension benefits while going back to work for the same employers under the auspices of another union), the court does not feel that an award of fees would deter any acts contrary to the purposes of ERISA. Finally, it cannot yet be determined whether the Trust's obtaining the information will ultimately benefit the participants and beneficiaries of the plan.

## V.

IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Plaintiff's motion for summary judgment is granted, and defendants' motion for summary judgment is denied.

2. Summary judgment shall be entered for plaintiff and against defendants on plaintiff's complaint.

3. Summary judgment shall be entered in favor of plaintiff and against defendants on defendants' cross complaint, pursuant to the opinion of Judge Aguilar.

4. Plaintiff will submit to this court within ten (10) days, and simultaneously serve upon defendants, a proposed form of judgment which encompasses this decision and the decision of Judge Aguilar.

5. If the parties are not able to agree upon a reasonable attorneys' fee for plaintiff as awarded in this opinion, plaintiff may notice a motion for the determination of such fees.

6. Costs of suit are awarded to plaintiff.