**SOUTHWEST ADMINISTRATORS, INC., Plaintiff,**

v.

**K–J DISTRIBUTORS, INC., an Ariz. corporation, dba Shamrock Distributing Co., Defendant.**

**No. CIV 87–1534 PHX PGR.**

United States District Court, D. Arizona.

Dec. 28, 1988.

Michael J. Keenan, Phoenix, Ariz., for plaintiff.

Charles L. Fine, Phoenix, Ariz., for defendant.

## MEMORANDUM AND OPINION

ROSENBLATT, District Judge.

This is a removed action filed by Southwest Administrators, Inc. ("Southwest") against K–J Distributors, Inc., dba Shamrock Distributing Co. ("Shamrock") in which it is alleged that certain Shamrock employees, not included by Shamrock in the collective bargaining unit, were actually performing bargaining unit work thereby requiring Shamrock to make contributions on their behalf to the Western Conference of Teamsters Pension Trust Fund ("Trust"). Southwest contends Shamrock's failure to pay the contested contributions is a violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and a breach of the collective bargaining agreement ("Agreement") between Shamrock and the Teamsters Union.

Defendant Shamrock is an Arizona corporation with distributing facilities in Phoenix and Tempe. Plaintiff Southwest is the administrator and assignee for the Trustees of the Trust. Effective April 1, 1981 to April 1, 1984, Shamrock was one of ten employers participating in an Agreement with Local Union No. 83 and Local Union No. 104 of the International Brotherhood of teamsters, Chauffeurs, Warehousemen and Helpers of America. Shamrock and Local Union No. 83 were the only two parties entering the subsequent Agreement effective April 1, 1984 to April 1, 1987.

Article 13 in both Agreements required pension contributions from the employer on behalf of each member of the bargaining unit, as defined in Article 3 of each Agreement ("warehouse lead person, warehousemen and local and intra-state drivers"). Southwest alleges that certain Shamrock employees not technically described as "drivers" or "warehousemen" were performing driver and warehouse tasks and pension contributions should have been made on their behalf.

On February 26, 1988 Shamrock received a determination of the bargaining unit from the NLRB, as defined as:

All regular full-time and part-time local drivers and warehousemen, including working warehouse lead person; but excluding salespersons, draft department employees, maintenance employees, temporary or college program and seasonal employees, mechanics, merchandisers, breakage employees, draft technicians, office clerical employees, guards and supervisors as defined in the Act.

The decision expressly notes no determination of the bargaining unit for prior years is intended or made.

Pending before this Court is Shamrock's Motion for Summary Judgment filed on the grounds that this Court lacks jurisdiction, that Plaintiff is not entitled to the relief requested and that judgment be granted Shamrock as a matter of law.

*Jurisdiction*

██ Southwest alleged federal jurisdiction pursuant to the National Labor Relations Act ("NLRA") Sec. 301(a), 29 U.S.C. Sec. 185(a) and ERISA Sec. 502, 29 U.S.C. Sec. 1132. ERISA grants jurisdiction to federal courts in civil actions brought by a plan fiduciary, such as Southwest, to enforce rights under the plan and to clarify rights to future benefits under the plan. 29 U.S.C. Sec. 1132(a), (e). In conjunction, Southwest alleges a breach by Shamrock of the Agreement, thereby invoking federal

jurisdiction under NLRA Sec. 301(a), 29 U.S.C. Sec. 185(a).

■ Shamrock contends the action centers on the determination of the collective bargaining unit, a task delegated to the NLRB in NLRA Secs. 7, 9(a), 29 U.S.C. Secs. 157, 159(a). In the alternative, Shamrock contends the claim is arguably an unfair labor practice claim under NLRA Sec. 8, 29 U.S.C. Sec. 158, and therefore subject to NLRB jurisdiction, citing *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). The Supreme Court's opinion is somewhat more flexible than Shamrock contends, "[i]n cases like this, which involve either an actual or an 'arguable' violation of Sec. 8 of the NLRA, federal courts typically defer to the judgment of the NLRB." *Id.* 108 S.Ct. at 837.

Shamrock supports its contention that the NLRB, not federal court, has jurisdiction over bargaining unit disputes by citing *Local No. 3–193 International Woodworkers of America v. Ketchikan Pulp Co.,* 611 F.2d 1295 (9th Cir.1980). Ketchikan, however, is easily distinguished; the dispute was between the employer and the union and focused on extending union representation to worksites recently acquired by the employer. Both parties clearly had access to the NLRB and the dispute did not involve a representational question at the original worksite.

Although the Ninth Circuit has acknowledged the strong policy of judicial deference to the NLRB on representation issues, *Ketchikan,* at 1299, the court has also affirmed the Congressional mandate that pension plan trustees have a forum in which to enforce trust obligations, including claims against employers for delinquent pension contributions. *Advanced Lightweight Concrete,* 108 S.Ct. at n. 14; *Laborers Health and Welfare Trust Fund for Northern California v. Kaufman & Broad of Northern California, Inc.,* 707 F.2d 412, 416 (9th Cir.1983). In *Advanced Lightweight Concrete,* the Supreme Court affirmed the Ninth Circuit's decision to deny plan trustees of a multi-employer plan access to federal district court for their suit against a participating employer for contributions due after the collective bargaining agreement expired and before a new one was adopted. The Court concluded the employer's actions constituted an unfair labor practice which preempted the ERISA claim and presented an issue for the NLRB. *Advanced Lightweight Concrete,* 108 S.Ct. at 838. Of key significance to the ERISA claim preemption was the Court's determination that access to federal courts under ERISA Sec. 502 "is limited to the collection of 'promised contributions' " and does not control where the employer engages in bad faith after the agreement was expired. *Id.* 108 S.Ct at 836. In the instant case, Southwest seeks to do what the Court accepted, to recover "promised contributions" from the employer.

Both parties cite *Kaufman & Broad,* a factually similar case, to support their arguments. Kaufman & Broad, an employer, was a party to a collective bargaining agreement requiring employer contributions to four trust funds ("Funds") for time spent on work within the union's jurisdiction. The employer failed to contribute for work it contended was beyond the scope of the union's jurisdiction. The Funds' state court action was removed to federal court under LMRA Sec. 301. Kaufman & Broad moved for summary judgment on the grounds that 1) federal court had no jurisdiction because the issue was union representation and primary jurisdiction rested with the NLRB, and 2) it never understood callback work to be covered by the agreement. The Ninth Circuit noted that the district court's Sec. 301 jurisdiction "to entertain suits upon a collective bargaining agreement generally survives an objection based on primary jurisdiction, and in such cases the district court and the [NLRB] have concurrent jurisdiction." *Kaufman & Broad,* at 415. The court found *Ketchikan* inapplicable because "the Trust Funds are neither parties to the Agreement nor employees, they have no standing to petition the Board for unit clarification or for an accretion of callback workers." *Id.; see also General Teamsters Union Local No.*

*174 v. Trick & Murray, Inc.*, 828 F.2d 1418 (9th Cir.1987). The Ninth Circuit found federal court jurisdiction based on both LMRA Sec. 301 (the employer's obligation to make pension contributions is defined in the collective bargaining agreement and incorporated by reference in various pension and trust agreements) and ERISA Sec. 502(e)(1) (federal court jurisdiction is available to trust fiduciary to enforce terms of plan). The court rejected the primary jurisdiction rationale "when the injured party bringing the suit has no acceptable means to invoke the Board's jurisdiction and cannot induce its adversary to do so." *Kaufman & Broad*, at 415.

Shamrock alleges that if Southwest had responded to correspondence from Shamrock and that if Shamrock had been timely served, Shamrock would have brought the matter before the NLRB. Consequently, Shamrock suggests that Southwest had access to the NLRB and is therefore exempt from the *Kaufman & Broad* "exception" to primary jurisdiction.

A relevant case not cited by either party is *Trustees of the Colorado Statewide Iron Workers (Erector) Joint Apprenticeship and Training Trust Fund v. A & P Steel, Inc.*, 812 F.2d 1518 (10th Cir.1987). The Tenth Circuit ruled that NLRA Sec. 301

> confers upon the court the power to resolve representational issues essential to the adjudication of a contract claim, including those over which the NLRB has concurrent jurisdiction, at least where the same representational question is not pending before the NLRB or where the NLRB's jurisdiction has not been invoked with respect to the dispute between the parties.

*A & P Steel*, at 1526, 1527. Shamrock cites *South Prairie Const. Co. v. Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) as affirmation that the NLRB has exclusive jurisdiction to determine the appropriate bargaining unit. The Tenth Circuit distinguishes *South Prairie*, however, noting that the action was not an NLRA Sec. 301 action and that the matter was pending before the NLRB when federal court determination was sought. *A & P Steel*, at 1526.

### Exhaustion of Remedies

Shamrock's second major contention in favor of its motion for summary judgment is that Southwest failed to exhaust administrative remedies and is consequently precluded from bringing this action in federal court. Southwest argues that neither the Agreement nor the Trust contain a provision requiring it to submit a claim for delinquent contributions to arbitration. The two Supreme Court cases cited by Shamrock as mandating arbitration both acknowledge that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute to which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

Shamrock refers to two cases purportedly espousing the exhaustion doctrine but which are readily distinguishable from the present case. The exhaustion doctrine was upheld in *Amato v. Bernard*, 618 F.2d 559 (1980), an action brought by the union seeking to recover benefits from the plan for a former employee. As Southwest correctly noted, the case addresses the exhaustion of administrative claims procedures set forth in the plan. *Viggiano v. Shenango China Div. of Anchor Hocking Corp.*, 750 F.2d 276 (3rd Cir.1984) involved a dispute between employees (with support from the union) and the employer. The court recognized the union as a party in interest; consequently those present were also parties to the collective bargaining agreement and subject to its terms. *Viggiano*, at 279.

A case remarkably similar to this one, cited by Southwest, squarely addresses this issue. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). In *Schneider*, the collective bargaining agreement between the union and the employer required employer contributions to two pension trust funds and incorporated the trust agreements by

reference. The trustee sued the employers in federal district court to recover delinquent employer contributions. The Supreme Court rejected the employer's contention that the trustees were third-party beneficiaries of the collective bargaining agreement and were bound by the arbitration clauses to the same extent as the union. The court ruled that

the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective bargaining agreement.

*Schneider*, 104 U.S. at 1849. The Court noted the arbitration clause language referring to differences arising between the "company and the union or any employee of the union" in its determination that neither the employer or the union intended to require arbitration of disputes between the trustees and the employer. *Id.* In the Agreements before this Court, a grievance is defined as "any controversy, complaint, misunderstanding or dispute arising as to the meaning and/or application of any provisions of this Agreement." April 1, 1981 Agreement, Art. 22; April 1, 1984 Agreement, Art. 21. The grievance procedures are addressed to employees, Shamrock and the Union, there is no reference to the plan Trustees. Whether the parties intended to arbitrate is a question for the courts. *Warrior & Gulf*, 80 S.Ct. at 1353.

*Illegality of Contributions*

■ Shamrock's contention that the contributions demanded by Southwest are illegal is without merit. Defendant's assertion that contributions can be made to a plan only in accord with a specific written agreement is correct. This issue will be resolved along with the determination of whether the employees at issue are actually within the collective bargaining unit. If the employees are not in the unit, no contributions will be demanded on their behalf; if they are in the unit, the contributions will be required according to the agreement and will not be illegal.

IT IS THEREFORE ORDERED that defendant Shamrock Distributing Company's Motion for Summary Judgment is denied.