**TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC., Plaintiff,**

v.

**BROCKWAY FAST MOTOR FREIGHT CO., Defendant.**

Civ. A. No. 88–5429(CSF).

United States District Court, D. New Jersey.

Nov. 2, 1989.

---

Richard A. Friedman, Zazzali, Zazzali, Fagella & Nowak, Trenton, N.J., for plaintiff.

Frederick H. Allen, III, Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan, Somerville, N.J., for defendant.

OPINION

FREDA L. WOLFSON, United States Magistrate.

This litigation involves the claim of plaintiff Trucking Employees of North Jersey Welfare Fund (hereinafter "the Fund"), that defendant Brockway Fast Motor Freight Company (hereinafter "Brockway" or "the employer") has refused to grant the Fund access to certain documents it deems necessary to conduct an audit of Brockway's books and records. The complaint further alleges that Brockway is delinquent in its contributions, and that further delinquencies may be discovered after completion of the audit. Brockway by way of answer denies the substance of the Fund's allegations. Both parties seek the

reasonable costs and attorneys' fees incurred in this suit.

In the instant motion, the Fund has moved for summary judgment and in turn Brockway has cross-moved for summary judgment. The parties have consented to have the undersigned decide this motion, having waived their right to proceed before a judge of the United States District Court, pursuant to 28 U.S.C. § 636(c)(3).

This Court is empowered to enter summary judgment under *Fed.R.Civ.P.* 56 where there exist no genuine issues of material fact and where judgment should be entered as a matter of law. A movant for summary judgment bears the burden of proof as to both of these required elements, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and the motion should be denied unless there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Here, the parties do not dispute the underlying material facts, which are recounted below, and thus, the Court is left to decide solely questions of law. Therefore, this case is ripe for disposition by summary judgment.

### FACTS

On April 13, 1987, Glenn Simpson became controller of the Fund. He instituted a revised audit program, which required a substantially broader review of an employer's books and records. In accordance with that revised audit program, a letter from David Ko, Supervising Auditor, dated April 26, 1988, notified Brockway that an audit was sought for the time period of January 1, 1985 to March 31, 1988. The documents requested in that letter were: Timecards, Trip sheets, Driver log, Weekly payroll journal, Individual earning records, New Jersey Quarterly Contributions Report (Form UC–27), New Jersey Quarterly Employer Report of Wages Paid (Form WR–30), New Jersey Unemployment Benefits charged to experienced rating account monthly report, monthly notice of disability

benefits charged or credited from the State of New Jersey Department of Labor, Employer's Quarterly Federal Tax Return (Form 941), Transmittal of Income and Tax Statements 1985 & 1986 (W–3), Wage and Tax statement 1985 & 1986 (Form W–2), Statements for Recipients of Income 1985 & 1986 (Form 1099), Summary of Form 1099 (Form 1096), Cash disbursement journal, Bank statements, General ledger, and Federal corporation tax return (Form 1120). Brockway refused to produce most of these records.

In May of 1988, the Fund conducted an audit of the Brockway books and records which Brockway provided for the time period of January 1, 1985 through December 26, 1987 and based on its findings notified Brockway by way of a letter dated June 2, 1988 that there was a deficiency of $773.53. On September 26, 1988, the Fund instituted suit for collection of the deficiency in the Superior Court of New Jersey, Law Division—Special Civil Part, Somerset County, Docket No. 384–266. The claim was reduced to a judgment in favor of the Fund and collection was made.

The Fund nonetheless persisted in its requests for additional documents. On November 7, 1988, a letter was sent by the law firm of Zazzali, Zazzali, Fagella & Nowak demanding that Brockway produce all of the above documents for the period January 1, 1985 through October 31, 1988.[1] Upon Brockway's continued refusal to cooperate in the expanded audit and re-audit, the Fund initiated this action.

This Court must resolve four issues: (1) whether, as Brockway contends, the Fund must proceed through the grievance provision of the Collective Bargaining Agreement, which requires the resolution of disputes by arbitration, (2) whether the Fund is precluded from conducting a re-audit of Brockway's records and books, (3) the proper scope of any further audits and (4) whether attorneys' fees are to be awarded to either party.

---

**1.** The request included the time period of January 1, 1985 through December 26, 1987 which was the subject of the prior audit and the judgment obtained thereon.

## I.

■ Initially, this Court must determine whether the dispute between the Trustees of the Fund and Brockway must proceed, as Brockway contends, through arbitration in accordance with the grievance provision of the Collective Bargaining Agreement, or, whether there may be resort to the judicial system. It is for the court, and not an arbitrator, to decide whether the dispute is arbitrable or subject to judicial resolution. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 651, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1980); *See also Associated Plumbing & Mechanical Contractors, Inc. v. Local Union No. 447,* 811 F.2d 480, 481 (9th Cir.1987); *International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Association,* 574 F.2d 783, 787 (3d Cir.1978); *Hospital & Health Care Workers, Local 250 v. Children's Hospital of San Francisco,* 694 F.Supp. 730, 731–32 (N.D.Calif.1988).

The Court is confronted with conflicting interpretations of the underlying nature of this action. The Fund contends that this case is for the collection of delinquent contributions and that, in connection therewith, it requires an inspection of Brockway's books and records to assess the reliability of its previously conducted audit for the period of January 1, 1985 to December 26, 1987, and further, to audit the December 27, 1987 to October 31, 1988 period. The Fund alleges federal subject-matter jurisdiction under § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132 and also § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), as a third party beneficiary to the Collective Bargaining Agreement entered into between Brockway and Teamsters Local 560. In contrast, Brockway views the action simply as one for interpretation of the Collective Bargaining Agreement to assess the scope of the Fund's right to audit records as well as to determine whether a re-audit is allowable.

If this case were one which was solely brought under the provisions of ERISA and had the issue been narrowly confined to a question of collecting delinquent contributions, it would be clear that under such circumstances immediate access to the federal courts would be appropriate [2]. *See Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc.,* 856 F.2d 837, 839, n. 1 (7th Cir.1988); *Viggiano v. Shenango China Division of Anchor Hocking Corp.,* 750 F.2d 276, 279 (3d Cir.1984). But that is not the simple issue presented here. Interpretation of the Agreement's relevant provisions is necessary to the determination of whether the matter must be arbitrated.

In interpreting the Collective Bargaining Agreement, this Court is guided by the analysis outlined in *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). In *Schneider,* it was determined that the policy reasons which support a presumption favoring arbitration under the *Steelworkers Trilogy* [3] are inapplicable where the disputes are between the employer and the trustees of employee-benefit funds. Since the use of economic weapons to disrupt labor harmony by way of strikes and lockouts are not available to trustees, the justification for presuming arbitration will not apply in such cases. *Id.* 466 U.S. at 372, 104 S.Ct. at 1849; *See also Pipe Fitters' Welfare Fund,* 856 F.2d at 839; *Southwest Administrators, Inc. v. K–J Distributors, Inc.,* 703 F.Supp. 841, 844–45 (D.Ariz.1988); *Southern Electrical Retirement Fund v. George Arp Electrical Corp.,* 635 F.Supp.

**2.** In fact, Brockway concedes in its opposition brief that if the case were "simply a matter of collecting delinquent contributions, defendant would not be challenging plaintiff's right to resort to court action." (Defendant's Brief, p. 9).

**3.** *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). *See also Becker Autoradio v. Becker Autoradiowork GmbH,* 585 F.2d 39, 44–45 (3d Cir.1978); *Hussey Metal Division v. Lectromelt Furnace Division,* 471 F.2d 556, 558 (3d Cir.1973).

139, 143 (E.D.Tenn.1986)[4]. Indeed, even prior to *Schneider*, this Circuit was unwilling to adhere to the arbitration presumption where the dispute was between a pension fund and an employer. *Trustees of Local 478 Trucking v. Siemens Corp.*, 721 F.2d 451 (3d Cir.1983).

Once the presumption of arbitrability is removed, the Court must then examine the relevant agreements[5] to ascertain whether the parties intended that the dispute in question be resolved only through arbitration. *Schneider*, 466 U.S. at 370–71, 104 S.Ct. at 1848. Brockway contends that the Fund must follow the same channels of mediation as if it were the union. Although it may be true that ordinarily a third party beneficiary's rights to an agreement are limited to those of the contracting parties, the Supreme Court has given special significance to third party beneficiaries when the relevant agreement is a collective bargaining agreement. *Id.* at 371 n. 11, 104 S.Ct. at 1848 n. 11, *quoting, Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960). Namely, the third party beneficiary rule is merely a rule of construction to determine contractual intent but it is not to be applied so inflexibly that it will defeat the intention of the parties. *Schneider*, 466 U.S. at 370–71, 104 S.Ct. at 1848. Therefore, the proper focus for a court is whether the parties to the collective bargaining agreement did indeed intend to condition the trustees' contractual right to seek enforcement of the collective bargaining agreement through exhaustion of the arbitration procedures. *Id.* at 371, 104 S.Ct. at 1848. *See also Pipe Fitters' Welfare Fund*, 856 F.2d at 840.

The collective bargaining agreement in question was entered into between Brockway and Local 560 on September 1, 1987 and is to run until August 31, 1990. Defendant contends that the controlling provision to this dispute is Article XXV[6] which

---

**4.** Courts have since refused to narrow the holding of *Schneider*. In *Associated Plumbing*, the court refused to distinguish *Schneider* on the basis that the trustees were not parties to the Collective Bargaining Agreement. *Associated Plumbing*, 811 F.2d at 482. In fact, the reasoning of *Schneider* has been extended to apply to retired employees. *See Anderson v. Alpha Portland Industries, Inc.*, 752 F.2d 1293, 1296 (8th Cir.) *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985).

**5.** The Pension Fund and employer never directly entered into any agreements. There is a Trust Agreement between the Fund and the union, and also a collective bargaining agreement between the union and the employer, which does not incorporate the Trust Agreement. It is the collective bargaining agreement, however, which is significant since it is this document on which plaintiff bases its claim.

**6.** Article XXV
Grievance and Arbitration Machinery
Court Action Barred
1. Any and all disputes, complaints, controversies, claims or grievances whatsoever between the Union or any employees and the Employer which directly or indirectly arise under, out of, or in connection with or in any manner relate to this Agreement or the breach thereof, or the acts, conduct or relations between the parties shall be adjusted as follows:
(a) The steward (or the alternate), as per Article XXI, shall first attempt to settle the matter with a representative of the Employer.
(b) If there is no mutually satisfactory resolution in step (a), or if the matter is not readily

subject to resolution on that level, a representative of the Union shall attempt to settle the matter with a representative of the Employer. No adjustment shall be deemed binding on the Union unless approved by an authorized representative under Article XXII.
(c) If they shall fail satisfactorily to dispose of any such dispute, complaint, controversy, claim or grievance, or if for any reason it has not been taken up by them, or if the matter does not lend itself to the foregoing procedure, the matter shall be submitted to arbitration pursuant to the rules and procedures of the New Jersey State Board of Mediation. The award or decision of the arbitrator, in addition to granting such other relief as the arbitrator may deem proper, may contain provisions commanding affirmative acts or restraining acts and conduct of the parties. If either party shall default in appearing before the arbitrator, he is empowered nevertheless to take the proof of the party appearing and render an award thereon. Any award or decision of the arbitrator shall be final and binding and shall be enforceable by appropriate proceedings at law or in equity. The taking of the oath by the arbitrator is hereby expressly waived. His fee shall be borne equally by the parties hereto.
(d) Decisions and awards shall be complied with within three (3) days after they are rendered, excluding Saturdays, Sundays and holidays.
(e) The parties agree that any papers, notices or processes to initiate or continue an arbitration hereunder may be served by mail and all papers, notices or processes in any application to a court to confirm or enforce an arbitration

mandates that any determination of disputes, controversies, or grievances as to the validity of the collective bargaining agreement must be arbitrated. The plaintiff, however, claims that Article XIII 6,[7] is controlling and therefore the plaintiff is afforded direct access to the court.

■ This Court does not find that the parties intended for the trustees to pursue arbitration as the sole means for adjudicating their disputes. The general grievance provision of Article XXV explicitly refers to disputes between the union or any employees and the employer; any mention of the trustees is noticeably absent. Courts are unwilling to infer that an arbitration provision should apply to trustees where they have not been specifically named. *Schneider,* 466 U.S. at 374, 104 S.Ct. at 1850; *Pipe Fitters' Welfare Fund,* 856 F.2d at 842; *Anderson,* 752 F.2d at 1298; *Siemens Corp.,* 721 F.2d at 454. Therefore, it is reasonable to conclude that the contracting parties did not intend to bind the trustees to the general grievance provision in Article XXV. *See O'Hare v. Gener-*

---

award hereunder, including service of the papers conferring jurisdiction of the parties upon the court, may be served by certified or regular mail, directed to the last known address of the Employer or the Union.

2. It is intended and agreed that the procedure herein established for the adjustment of disputes shall be the exclusive means for the determination of all disputes, complaints, controversies, claims or grievances whatsoever, including disputes over the validity of any provision of this Agreement and over the procedural or substantive arbitrarily [sic] of any dispute, and including claims based upon any breach of the no-strike, no-stoppage pledges of this Agreement or upon any other breach of this Agreement and any and all claims, demands or acts arising therefrom. It is intended that this provision shall be interpreted as broadly and inclusively as possible. Neither party shall institute any action or proceeding in a court of law or equity, state or federal, or before an administrative tribunal, other than to compel arbitration as provided in this Agreement, or to confirm or otherwise enforce the award of an arbitrator. This provision shall be a complete defense to an also ground for a stay of any action or proceeding instituted contrary to this Agreement. An action or proceeding to confirm or otherwise enforce the award of an arbitrator may be brought where the Union or the Employer maintains an office or place of business or where the arbitration award was rendered.

3. Any dispute, complaint, controversy, claim or grievance hereunder which any employee may have against the Employer may be instituted and processed only by the Union in the manner herein provided. No employee shall have the right individually to institute or process any action or proceeding with reference to any dispute, complaint, controversy, claim or grievance; or to initiate, or compel arbitration in the event the Union fails or refuses to proceed with arbitration.

7. Article XIII

Benefit Funds

1. The Employer shall contribute to the Trucking Employees of New Jersey Welfare Fund, Inc. ("the Fund") for each hour worked by a bargaining unit employee, not to exceed forty (40) hours per week, as set forth below and in Schedule "B" annexed hereto.

2. Paid holidays, sick days, personal days, and vacations shall be considered as time worked and shall be considered a part of the forty (40) hour weekly contribution.

3. Contributions shall be made by the Employer for and on behalf of all employees, including probationary, temporary, or part-time employees working within the bargaining unit. Said contributions shall be paid weekly.

4. The Employer hereby agrees to permit an authorized representative of the Fund to inspect its payroll records for the purpose of checking accuracy of contributions required to be made by the Employer to said Fund. If the Employer fails to make the contributions provided for herein within the time required by the trust indenture and the rules and regulations of the Fund, then the Trustees may cancel out the insurance coverage for such employees on whose account the Employer has failed to contribute.

5. Notwithstanding anything herein contained, it is agreed that in the event the Employer is delinquent at the end of a period in payment of contributions to the Fund as required under this Agreement, in accordance with the rules and regulations of the Trustees of the Fund, the employees or their representatives, after the Fund or the Union shall have given seventy-two (72) hours notice to the Employer of such delinquency in Fund payments, shall have the right to take such action as they deem necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom.

6. The Union or the appropriate Board of Boards of Trustees shall have the right to enforce this Article, including the provisions pertaining to delinquent contributions, by proceeding through arbitration or by instituting appropriate action before a court or governmental agency or by pursuing any other remedies provided by law or this Agreement.

*al Marine Transport Corp.*, 740 F.2d 160, 168 (2d Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985).

In contrast, Article XIII deals exclusively with the subject of benefit funds. The trustees are specifically given the right to enforce the article by direct access to the courts. The defendant's interpretation that Article XIII, 6 deals solely with delinquent contribution is erroneous. The language of the clause is not so limiting; it states that resort may be had to the courts to enforce the Article, *"including* the provisions pertaining to delinquent contributions"*. (Emphasis added). This would imply that the universe of subjects covered by this clause is greater than the collection of delinquent contributions.

While it may be true that Article XIII, 6 is silent on the subject of re-audits or the scope of an audit, so is Article XXV. But at a minimum, section 4 of Article XIII does relate to the inspection of payroll records for the purpose of checking the accuracy of contributions. Furthermore, if an arbitration provision does not mention the subject matter of the dispute involved, courts are unwilling to broadly construe the scope of such a provision to include matters not so addressed. *Delgrosso v. Spang and Co.*, 769 F.2d 928, 933 (3d Cir. 1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986); *McClendon v. Continental Group, Inc.*, 648 F.Supp. 1115, 1119 (D.N.J.1986).

Under Brockway's interpretation, any time the trustees rely on the Collective Bargaining Agreement, the dispute must be arbitrated, with the exception of the collection of delinquent contributions. Such a position is too far reaching for this Court to adopt, especially in light of the principle that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582, 80 S.Ct. at 1352 (1960); *See also Delgrosso*, 769 F.2d at 933; *John Ashe Associates, Inc. v. Envirogenics Co.*, 425 F.Supp. 238, 242 (E.D.Pa.1977).

Similarly in *Siemens*, where the dispute was a contested interpretation of a bargaining agreement, the court rejected the employer's narrow construction of the Trust Agreement. The court refused to bind the trustees to the general arbitration provision since they were not specifically mentioned in that provision. The court also found it inappropriate to limit court access to the trustees solely for the collection of delinquent contributions where there were no explicit limitations imposed on them. *Siemens Corp.*, 721 F.2d at 454–55.

The Court is of the opinion that claims initiated by trustees, relating to delinquent funds and inspection of records, are to be governed by Article XIII, 6. Therefore, for purposes of determining whether plaintiff's claims must first be arbitrated, it is of no consequence to distinguish whether the claims are based upon the statutory rights afforded under ERISA or are derived from the collective bargaining agreement, as was done in *Delgrosso v. Spang & Co.*, 769 F.2d 928, 932 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986), since under either theory the trustees are not subject to the Article XXV compulsory arbitration provision.

## II.

The Fund seeks to inspect the books and records of Brockway for the period covering January 1, 1985 through October 31, 1988. The Court, however, will treat this request as involving two distinct time periods. The first period covers January 1, 1985 through December 26, 1987 and the second period extends from December 27, 1987 through October 31, 1988. The Fund has already conducted an audit of the first period and determined there was a deficiency of $737.53. This claim has been reduced to a judgment and collection has been made by the Fund. Having determined that this Court is the proper forum to resolve the issues raised, this Court must then decide if plaintiff's request to conduct a re-audit of defendant's books and records is precluded by the doctrine of *res judicata.* While the Supreme Court's decision in *Central States v. Central Transport, Inc.*, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) establishes that an employer who

participates in a multiemployer benefit plan that is governed by ERISA must allow the trustees of that plan the opportunity to inspect that employer's books and records, nonetheless, ERISA and the *Central States* case are silent on the propriety of a re-audit. It is this Court's opinion that *res judicata* precludes the Fund from conducting a re-audit of the period covering January 1, 1985 through December 26, 1987.

■ Claim preclusion prevents a party from prevailing on issues he might have but did not assert in the first action. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). In applying claim preclusion principles, a federal court is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state court judgment the same effect as would be given under the law of the state in which the judgment was rendered. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Gregory*, 843 F.2d at 116. Federal courts are not free to employ their own rules of *res judicata* but rather must apply the preclusion rules chosen by the state from where the judgment is taken. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985), citing, *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982); *McNasby v. Crown Cork and Seal Co., Inc.*, 888 F.2d 270 (3d Cir.1989). Therefore, since the judgment was taken from a New Jersey court, it is that state's preclusion laws which control. *Migra*, 465 U.S. at 85, 104 S.Ct. at 898.

In New Jersey, in order for the doctrine of *res judicata* to apply, the party seeking preclusion of the claim must show that there has been a final judgment by a court or tribunal of competent jurisdiction. *Culver v. Insurance Co. of North America,* 115 N.J. 451, 460, 559 A.2d 400 (1989), citing, *Charlie Brown of Chatham, Inc. v. Board of Adjustment*, 202 N.J.Super. 312, 327, 495 A.2d 119 (App.Div.1985); *Warren Township v. Suffness*, 225 N.J.Super. 399, 409, 542 A.2d 931 (App.Div.), *cert. denied*, 113 N.J. 640, 552 A.2d 166 (1988). Further, there must be substantially similar or identical causes of action, as well as issues, parties and relief sought. *Culver*, 115 N.J. at 460, 559 A.2d 400; *T.W. v. A.W.*, 224 N.J.Super. 675, 682, 541 A.2d 265 (App.Div. 1988).

Here, there is no dispute that the parties in the New Jersey state action and this case are the same. Furthermore, the Fund concedes that there was an audit taken for the period January 1, 1985 through December 26, 1987, that judgment for the claimed deficiency was obtained, and that collection was made. But the Fund contends that the judgment amount was not based on an audit encompassing all the documents it requested and required from Brockway. It is now the Fund's position that they were forced into the Hobson's choice of either seeing no documents at all or reviewing those documents Brockway provided, collecting delinquencies on the basis of those documents and then proceeding further. For the reasons discussed below, this Court finds the Fund's argument unpersuasive.

Although it may be true that Brockway refused to provide all of the documents requested by the Fund, this did not preclude the Fund from seeking judicial enforcement of its requests as it has done in the present action. Further, the June 1988, single paragraph letter from Glenn Simpson to Daniel Dameo, in no way indicates that the Fund's assessment of the deficiency was partially complete or that judgment was to be conditioned upon the review of further documents.[8] To the contrary, it conclusively stated in simple terms

---

8. The letter was signed by Glenn Simpson, Controller for Local 560 Benefit Fund and stated in full,

Dear Mr. Dameo:
We have completed our audit of Brockway Fast Motor Freight, Inc. for the period January 1, 1985 through December 26, 1987. En-closed for your review and payment is the detailed audit findings.
Please submit payment within ten days in the amount of $737.53.
Sincerely,
Glenn Simpson
Controller

that the audit was complete and that the amount owed was $737.53.

Glenn Simpson, by way of certification, persists that under the revised audit program he has instituted,[9] Brockway has not provided all the necessary records needed to accurately assess any potential deficiency in contributions. If there truly was a dispute as to the accuracy of the deficiency amount, such a claim should have been raised before securing and collecting the judgment. The fact that a claim could have been raised at an earlier trial but was not is the very reason to justify its preclusion in a subsequent action. *Donegal Steel Foundry Co. v. Accurate Products Co.*, 516 F.2d 583, 587 (3d Cir.1975); *Flood v. Besser Co.*, 324 F.2d 590, 591 (3d Cir.1963); *Mazzilli v. Accident & Casualty Insurance Co.*, 26 N.J. 307, 314, 139 A.2d 741 (1958), citing, *City of Paterson v. Baker*, 51 N.J.Eq. 49, 53, 26 A. 324 (Ch. 1893); *Joseph L. Muscarelle, Inc. v. State, by Transportation Dept.*, 175 N.J.Super. 384, 395, 418 A.2d 1310 (App.Div.1980).

Accordingly, since the request to re-audit the period of January 1, 1985 through December 26, 1987, involves the same parties, issues, cause of action, and relief sought, this Court holds that the request is precluded by the judgment obtained from the New Jersey state court.

The principles of claim preclusion do not, however, reach the second period of December 27, 1987 through October 31, 1988. This time period involves an entirely new audit period which has yet to be acted upon. Therefore, *res judicata* cannot apply. *Board of Directors, Ajax v. First National Bank of Princeton*, 33 N.J. 456, 464, 165 A.2d 513 (1960); *Zaromb v. Borucka*, 166 N.J.Super. 22, 27–28, 398 A.2d 1308 (App.Div.1979). Thus, this Court must determine whether the Fund's requests for documents for this subsequent time period fall within the scope of a proper audit.

### III.

The Fund contends that, in order to accurately assess the amount of contributions the employer may owe for the unaudited period of December 27, 1987 through October 31, 1988, it is entitled to more than just the records Brockway is willing to provide. Brockway does not dispute that under *Central States v. Central Transport*, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), the Fund has the right to audit its records, nor does it contest that in *Combs v. King*, 764 F.2d 818 (11th Cir.1985) it was held that under ERISA, an employer participating in a multi-employer pension fund has an affirmative duty to maintain various records. Rather, Brockway challenges the scope of the audit, a question left unanswered by the Court in *Central States*. *Id.* 472 U.S. at 581, 105 S.Ct. at 2845.

The Fund, by way of Glenn Simpson's certification, assert that in order to attain thorough and reliable audit results the following documents must be produced: Time Cards; Trip Sheets; Driver Log; Weekly Payroll Journal; Individual Earning Records; New Jersey Quarterly Contributions Report (Form UC–27); New Jersey Quarterly Employer Report of Wages Paid (Form WR–30); New Jersey Unemployment Benefits Charged to Experienced Rating Account Monthly Report; Monthly Notice of Disability Benefits Charged or Credited from the State of New Jersey Department of Labor; Employer's Quarterly Federal Tax Return (Form 941); Transmittal of Income and Tax Statements 1985 and 1986 (W–3); Wage and Tax Statement 1985 and 1986 (Form W–2); Statements for Recipients of Income 1985 and 1986 (Form 1099); Summary for Form 1099 (Form 1096); Cash Disbursement Journal; Bank Statements; General Ledger; Federal Corporation Tax Return (Form 1120). According to Simpson, the audits which had been conducted prior to implementation of the revised audit program do not meet the appropriate standards for a reliable audit. But Brockway contends that under Article XIII, 4 of the Collective Bargaining Agreement

---

**9.** It is important to note that Mr. Simpson's newly instituted program had already been in existence at the time of the first audit period.

it is only required to grant the Fund access to its payroll records since that is the only document specifically mentioned. For the reasons discussed below, the Court finds Brockway's narrow interpretation of the Agreement and its obligations thereunder untenable.

■ The trustees of a pension plan have a fiduciary duty to preserve the financial security of a pension fund and to see that the assets of the fund are applied for the benefit of the employees to the greatest extent possible. *Adams v. New Jersey Brewery Employees' Pension Trust Fund,* 670 F.2d 387, 397 (3d Cir.1982). Congress has invoked the common law of trusts to define the general scope of a trustee's authority and responsibility. *Central States v. Central Transport,* 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985). Therefore, in order for the Fund to fullfill its objectives it must have adequate information to perform its fiduciary duties of collecting, administering, and paying out benefits. *Building Service Employees Pension Trust v. Horsemen's Quarter Horse Racing Association,* 609 F.Supp. 1075, 1081 (N.D.Cal.1985).

The legislative history of ERISA indicates that one of the goals to be achieved is to increase the information and data available to participants. *Combs v. King,* 764 F.2d 818, 822 (11th Cir.1985). The legislative response was seen as a necessary measure to combat the deficiencies which existed under the Welfare and Pension Plans Disclosure Act.

"[E]xperience has shown that the limited data available under the present Act is insufficient. Changes are therefore required to increase the information and data required in the reports both in scope and in detail. Experience has also demonstrated a need for a more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the manage-

ment and investment of his plan funds have been entrusted. At the same time, the safeguarding effect of the fiduciary responsibility section will operate efficiently only if fiduciaries are aware that the details of their dealings will be open to inspection, and that individual participants and beneficiaries will be armed with enough information to enforce their own rights as well as the obligations owed by the fiduciary to the plan in general."

H.R.Rep. No. 98–533, 93d Cong., 2d Sess., *Reprinted in* 1974 U.S.Code Cong. and Ad. News 4639, 4649.

Brockway's interpretation of the Collective Bargaining Act must therefore be examined in light of the Fund's fiduciary responsibility to the employees as well as the broad policy concerns underpinning ERISA. *See Building Service Employees Pension Trust,* 609 F.Supp. at 1081.

The relevant language of Article XIII, 4 provides that "[t]he employer hereby agrees to permit an authorized representative of the Fund to inspect its payroll records for the purpose of checking accuracy of contributions required to be made by the Employer to said Fund." While it may be true that the language of this Collective Bargaining Agreement is not as broad as the language of the agreements examined in *Central States* or *Combs,* nonetheless there does exist the same intent of ensuring an accurate audit for purposes of determining contributions. Furthermore, Brockway's position that it only agreed to provide access to payroll records and that that is all it is willing to voluntarily produce is somewhat disingenuous since Brockway has provided other documents to the Fund in the past.

■ The Court must therefore decide if the records the Fund now seek are relevant to its audit program. The Fund conceded at oral argument that it only seeks to review records which Brockway already maintains. Consequently, the Court need not address the request for time cards or Statements for Recipients of Income 1985 and 1986 (Form 1099), since there are no such records kept by Brockway. Further-

more, since Brockway has provided the Fund with trip sheets, driver logs, weekly payroll journals, and individual earning records in the past, the Court does not recognize a *bona fide* objection to their disclosure for the requested audit period of December 27, 1987 through October 31, 1988. These documents shall be produced. The Court will now consider whether the remaining requested documents may be inspected by the Fund.

Absent a showing of bad faith, the reasonableness and propriety of an audit are better left to the generally accepted standards of the accounting profession. *Central States v. Central Transport,* 472 U.S. at 567–68, 105 S.Ct. at 2838–39. The Fund relies on the certification of its controller Glenn Simpson,[10] a Certified Public Accountant, who maintains that the documents he has requested are necessary in order to provide the auditor with different routes and crosschecks to assure thorough and reliable audit results. *See Central States v. N.E. Friedmeyer–Sellmeyer Distribution Co.,* 650 F.Supp. 978 (E.D.Mo. 1987) (where the Court ordered that the defendant produce many of the same documents requested here in order to ensure an accurate audit).

In *Friedmeyer,* the court was presented with expert analysis and had the opportunity to assess the credibility of the expert witnesses called by the employer and pension fund. There the court found the pension fund's accountant more convincing given his considerable expertise in the area. No such weighing need be done here. Brockway's failure to offer *any* expert testimony to contradict Simpson's position requires that this Court defer to the discretion of the Fund's expert for the appropriate accounting procedures.

The Fund's stated objective for the audit is to determine whether the employer's

records are accurate. The actions of the Fund are therefore taken for a valid purpose under the Collective Bargaining Agreement and are consistent with the purposes and policies of ERISA. *See Building Service Employees Pension Trust,* 609 F.Supp. at 1079. Brockway has made no allegations of bad faith as to the Fund's auditing policies. In fact, Brockway's President, Daniel Dameo, by way of certification concedes that Brockway is not the victim of selective enforcement.[11]

Brockway does, however, raise a valid concern of confidentiality and privacy as it relates to the documents in question. This Court can alleviate the potential harm from disclosure by resorting to protective measures such as those used in *Friedmeyer, supra,* 650 F.Supp. at 980. There, the court disallowed the auditor from removing or copying records. Moreover, the use of such information was restricted to the purpose of determining whether the employer adequately complied with the employer contribution provisions of the collective bargaining agreement. *Id.* at 980–81.

Other prophylactic measures can include the use of on-site only inspections and limitations on disclosure. The intended goal is that there be conditions which best protect Brockway's confidentiality concerns while also allowing the trustee to fulfill its obligations. *See Central States v. Beelman Truck Co.,* 653 F.Supp. 678, 680 (N.D.Ill. 1987). The Court will look to the parties to choose the measures which best suit their needs, by entering into a Protective Order conditioned upon final court approval.

## IV.

In connection with their motions for summary judgment, both parties have requested an award for attorneys' fees. In an ERISA action, the relevant section for such

---

**10.** Glenn Simpson's qualifications also include a Bachelor of Science and Masters degree in accounting. Prior to his employment with the Fund he served as controller for Garden State Truck Rentals, Inc. and then spent seven years

with the Casino Control Commission's finance department.

**11.** Brockway does allege that the decision by the Fund to re-audit is an arbitrary one; but since this Court will preclude a re-audit it need not

relief is found in 29 U.S.C. § 1132(g)[12]. Since this Court has determined that this is not an action where a judgment will be entered in favor of the Fund to collect delinquent contributions, the mandatory relief provision of § 1132(g)(2) is inapplicable. It is therefore within the Court's discretion under § 1132(g)(1) whether attorney's fees should be awarded.

■ To determine whether an award of fees is appropriate this Circuit considers five policy factors:[13] 1) the offending parties' culpability or bad faith; 2) the ability of the offending parties to satisfy an award of attorneys' fees; 3) the deterrent effect of an award of attorneys' fees against the offending parties; 4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir.1983); *McHugh v. Teamsters Pension Trust Fund of Philadelphia*, 638 F.Supp. 1036, 1049 (E.D.Pa. 1986); *Gray v. Dow Chemical Co.*, 615 F.Supp. 1040, 1045 (W.D.Pa.1985), *aff'd*, 791 F.2d 917 (3d Cir.1986); *Kann v. Keystone Resources, Inc.*, 575 F.Supp. 1084, 1096 (W.D.Pa.1983).

The factors serve merely as flexible guidelines and no one factor is determinative; nor must each one be considered. *Gray*, 792 F.2d at 258. The guidelines speak of an "offending party" but in the case *sub judice*, the issues involved do not lend themselves to producing an offending party. In effect, each party has partially prevailed on the merits.

■ Moreover, neither side has exhibited any signs of bad faith. The arguments raised by counsel were meritorious and their interpretations of the Collective Bargaining Agreement were such that reasonable minds could differ. Indeed, some of the claims put forth by the parties involved questions of first impression. Additionally, traditional policy cautions against awarding attorneys' fees except in limited circumstances. *See McHugh*, 638 F.Supp. at 1050; *Bonar v. Barnett Bank of Jacksonville, N.A.*, 488 F.Supp. 365, 370 (M.D.Fla. 1980). This Court, therefore finds it appropriate to deny attorneys' fees to the parties.

In conclusion, the Fund's request for the documents it has listed as necessary to conduct a reliable audit is granted but the Fund is precluded from conducting a re-audit for the period of January 1, 1985 through December 26, 1987. The parties' applications for attorneys' fees are denied.

### ORDER

This matter having been opened to the Court by Zazzali, Zazzali, Fagella & Nowak, counsel for Plaintiff, Trucking Em-

---

address Brockway's limited claim of arbitrariness.

**12.** (g) Attorney's fees and costs; awards in actions involving delinquent contributions

(1) In any action under this subchapter (other than an action described in paragraph (2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorneys' fee and costs of action to either party.

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**13.** The five factor standard is followed by most of the Circuits. *See Gray v. New England Telephone and Telegraph Co.*, 792 F.2d 251 (1st Cir.1986); *Miles v. New York State Teamsters Conference*, 698 F.2d 593 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir.1980); *Lawrence v. Westerhaus*, 749 F.2d 494 (8th Cir.1984); *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587 (9th Cir.1984); *Gordon v. United States Steel Corp.*, 724 F.2d 106 (10th Cir.1983); *Fine v. Semet*, 699 F.2d 1091 (11th Cir.1983).

ployees of North Jersey Welfare Fund, Inc., on application for an Order granting summary judgment and attorneys' fees and by Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan, counsel for Defendant, Brockway Fast Motor Freight Company, appearing in opposition thereto and for a cross-motion for summary judgment and for attorneys' fees, and the Court having considered the moving papers, and the opposition thereto, and having heard oral argument, this matter being considered pursuant to 28 U.S.C. § 636(c)(3), and for good cause shown,

IT IS on this 2nd day of November, 1989,

ORDERED that the motion and cross-motion for summary judgment are granted in part and denied in part, and in connection thereto, it is further

ORDERED that Defendant shall provide Plaintiff with access to each of the following documents in connection with Plaintiff's audit of Defendant's books and records for the period commencing with December 27, 1987: Trip Sheets; Driver Log; Weekly Payroll Journal; Individual Earning Records; New Jersey Quarterly Contributions Report (Form UC–27); New Jersey Quarterly Employer Report of Wages Paid (Form WR–30); New Jersey Unemployment Benefits Charged to Experienced Rating; Account Monthly Report; Monthly Notice of Disability Benefits Charged or Credited From the State of New Jersey Department of Labor; Employer's Quarterly Federal Tax Return (Form 941); Wage and Tax Statement 85 & 86 (Form W–2); Statements for Recipients of Income 85 & 86 (Form 1099); Summary for Form 1099 (Form 1096); Cash Disbursement Journal; Bank Statements; General Ledger; Federal Corporation Tax Return (Form 1120), and it is further

ORDERED that should Defendant seek a Protective Order the Court has left the terms of that Order to the discretion of the parties, subject to final Court approval, and it is further

ORDERED that Plaintiff is precluded from re-auditing the period of January 1, 1985 through December 26, 1987, and it is further

ORDERED that both motions for attorneys' fees are hereby denied.