**PIPE FITTERS' WELFARE FUND,
LOCAL UNION 597, et al.,
Plaintiffs–Appellants,**

v.

**MOSBECK INDUSTRIAL EQUIPMENT,
INC. and Twiddy Corporation,
Defendants–Appellees.**

**No. 87–2206.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1988.

Decided Aug. 30, 1988.

Robert P. Lyons, Hugh J. McCarthy & Associates, Ltd., Chicago, Ill., for plaintiffs-appellants.

John A. Clark, Kanter & Mattenson, Ltd., Chicago, Ill., for defendants-appellees.

Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

The Welfare Fund, Retirement Fund, and Training Fund of the Pipe Fitters' Association, Local Union 597 (the Trust Funds), filed an action to collect contributions allegedly owed to the Trust Funds by Mosbeck Industrial Equipment (Mosbeck) and Twiddy Corporation (Twiddy). Mosbeck is a subsidiary of Twiddy. The district court dismissed the action on the ground that the Trust Funds were required to submit the matter to arbitration, pursuant to the terms of a collective bargaining agreement between the Mechanical Contractors Association and the Pipe Fitters' Association, Local Union 597 (the Union). We reverse.

## I

### Facts

The Trust Funds receive contributions from participating employers pursuant to collective bargaining agreements between the employers and the Union. The Trust Funds are multiemployer funds governed by the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 *et seq.* Participating employers in the Trust Funds are required by the collective bargaining agreements, and the trust agreements that created the Trust Funds, to submit monthly reports to the Trust Funds. These reports list the hours worked by Union employees during the particular month. Employers are required to make contributions at a specified rate for each reported hour. Mosbeck and Twiddy are participating employers and are bound by the provisions of a collective bargaining agreement and by the trust agreements under which the Trust Funds are maintained.

The Trust Funds audited the books and records of Mosbeck and Twiddy and concluded that they had not made all of their required contributions. Accordingly, the Trust Funds initiated this action seeking to recover delinquent contributions in the amount of $12,782, plus interest and liquidated damages. On February 12, 1987, Twiddy filed a motion to dismiss the action on the ground that its collective bargaining agreement with the Union explicitly required arbitration of disputes regarding contributions to the Trust Funds. On April 9, 1987, the district court held that the collective bargaining agreement did evidence an intention to submit this dispute to arbitration and that the Trust Funds were bound by that intention. On July 10, 1987, the district court denied the Trust Funds' motion to reconsider. This appeal followed.

## II

### The District Court Opinion

The analysis of the district court focused on the terms of the relevant collective bargaining agreement and on *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). According to the district court, the Supreme Court in *Schneider* viewed the issue of arbitration of trust fund contribution disputes as an issue of contract construction. The Court in *Schneider* examined the parties' relevant trust fund agreements and collective bargaining agreement and concluded that none of those agreements manifested an intention to submit trust fund disputes to arbitration. The Court therefore ruled that arbitration was not required.

The district court distinguished the instant case from *Schneider* because of language in the collective bargaining agreement between the Union and Mosbeck and Twiddy. The court said that "[q]uite unlike the collective bargaining agreement in *Schneider,* ... the agreement in the instant case is replete with references to arbitration of disputes concerning fund contributions, thereby evidencing an intent

... to require arbitration of such disputes." *Pipe Fitters' Welfare Fund, Local 597 v. Mosbeck Indus. Equip.*, No. 86 C 6340, mem. op. at 5 (N.D.Ill. Apr. 9, 1987) [available on WESTLAW, 1987 WL 9581]; R. 41. The court noted that Article XIII, section 4 of the collective bargaining agreement provided that " '[a]ll disputes, ... including Welfare, Retirement and Training Fund contributions, must be arbitrated....' " *Id.* at 2 (quoting Article XIII, section 4 of the Area Agreement between Mechanical Contractors Association and Pipe Fitters' Association, Local Union 597 [hereinafter Area Agreement]; Appellants' App. at C). The court also relied on Article XIII, section 5 of the agreement, which said that any dispute regarding Trust Fund contributions " 'between the parties hereto or between an employer and an employee, or an officer or representative of either party ... shall immediately be submitted in writing to the respective President and Business Manager of the parties hereto with a copy to the Joint Arbitration Board.' " *Id.* at 5 (quoting Article XIII, section 5 of the Area Agreement). According to the court, the Union was clearly a party to these agreements, and the trustees of the Trust Funds were representatives of the Union. *Id.* at 5–6. Therefore, the court concluded that "the many references in the collective bargaining agreement to arbitration in conjunction with fund contribution disputes leads to the conclusion that the parties did intend to require arbitration of disputes such as that presented in the instant case." *Id.* at 6.

In response to the Trust Funds' motion for reconsideration, the court entered another memorandum opinion clarifying its position with respect to the trustees of the Trust Funds acting as representatives of the Union. The Trust Funds argued that they were not representatives of the Union and that therefore they could not access the arbitration mechanism outlined in the collective bargaining agreement. The court resolved this issue by concluding that there was an identity of interest between the Union and the Trust Funds in the context of contribution disputes. According to the court, the Trust Funds "can act as representative of the union where, as here, the interest of the union, to ensure contributions to the Funds, is the same as that of the Funds." *Pipe Fitters' Welfare Fund, Local 597 v. Mosbeck Indus. Equip.*, No. 86 C 6340, mem. op. at 3 (N.D.Ill. July 10, 1987) [available on WESTLAW, 1987 WL 13982]; R. 51.

## III

### Analysis

As the district court recognized, the resolution of this case is governed by the analysis in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). In *Schneider*, the Supreme Court addressed the precise question presented here: Under what circumstances must a trust fund arbitrate a contribution dispute? The first issue decided by the Court was that there is no presumption favoring arbitration in controversies between an employer and an employee-benefit trust fund. Unlike traditional labor disputes, trust funds do not have recourse to economic weapons such as strikes and lockouts. The Court thus concluded that there was no federal interest in promoting arbitration of disputes between trust funds and employers.[1] *Id.* at 372, 104 S.Ct. at 1849.

---

1. Not only is there no federal presumption in favor of arbitration in disputes regarding trust fund contributions, but Congress has affirmatively opened the federal courts to trust funds so that they might enforce an employer's obligations. In its 1980 amendment to ERISA, Congress attempted to deal with the problem of employers who had failed to make required contributions by adding §§ 502(g)(2) and 515 to the statute. Pub.L. No. 96–364, 94 Stat. 1295 (codified at 29 U.S.C. §§ 1132, 1145). Section 515 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 502(g)(2) of ERISA grants the trustees of trust funds the right to bring an action in federal district court to enforce § 515. 29 U.S.C. § 1132(g)(2).

The Court next addressed whether a trust fund must arbitrate disputes with an employer on the ground that the trust fund is a third-party beneficiary of the collective bargaining agreement between the employer and the union. Mosbeck and Twiddy raise the same argument here. Appellees' Br. at 6–7. The Court in *Schneider* said that collective bargaining agreements are not "typical third-party beneficiary contract[s]," 466 U.S. at 371 n. 11, 104 S.Ct. at 1848 n. 11 (quoting *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 468, 80 S.Ct. 489, 495, 4 L.Ed.2d 442 (1960)), and that the third-party beneficiary rule is merely a rule of construction that should not be applied inflexibly to defeat the intention of the parties. Consequently, the Court said that the issue to be decided was whether the relevant trust fund agreements and collective bargaining agreement demonstrated an intent to arbitrate, and not whether the trust funds were merely third-party beneficiaries.

■ Because there is no presumption of arbitrability, and because third-party beneficiary rules are not applied mechanically in the context of a collective bargaining agreement, *Schneider* stands for the proposition that courts must carefully examine the pertinent trust and collective bargaining agreements to determine whether parties intended to arbitrate disputes between trust funds and employers. *Id.* 466 U.S. at 371–72, 104 S.Ct. at 1848–49. In this case, the district court found plain language requiring arbitration in the relevant collective bargaining agreement. In reviewing this decision, our standard of review is de novo.

Contract construction is a question of law unless the contract is ambiguous. *Associated Plumbing & Mechanical Contractors v. Local Union No. 447, United Ass'n of Journeymen*, 811 F.2d 480, 482 (9th Cir. 1987); *Air Line Stewards and Stewardesses Ass'n v. American Airlines*, 763 F.2d 875, 878 (7th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

### A. Trust Fund Agreements

■ We first examine the relevant agreements that established and govern the Trust Funds. The Pipe Fitters' Retirement Fund explicitly provides that the trustees of the Fund "may take such steps, including the institution and prosecution of, or the intervention in, any proceeding at law or in equity or in bankruptcy as may be necessary or desirable to effectuate the collection of such employer contributions." Article III, Section 3.04 of the Trust Agreement and Retirement Plan of Pipe Fitters' Retirement Fund, Local No. 597; Appellants' App. at A. The Pipe Fitters' Welfare Fund contains virtually identical language. *See* Article V, Paragraph 1 of the Agreement and Declaration of Trust; Appellants' App. at B. These provisions unambiguously allow the administrators of the Trust Funds to bring civil actions to enforce contribution requirements. We must conclude therefore that the relevant trust agreements do not evidence an intention to require the Trust Funds to submit contribution disputes to arbitration. Indeed, the agreements plainly suggest that the parties intended for the trustees of the Trust

In *Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, —— U.S. ——, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), the Supreme Court recently emphasized the degree of congressional commitment to ensuring that employers meet their contribution requirements. Referring to §§ 515 and 502(g)(2), the Court said that "Congress added these strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts." *Id.*, 108 S.Ct. at 835. The Court then cited to legislative history of the 1980 amendments to ERISA which said that "'[s]ound national pension policy demands that employers who *enter into agreements* providing for pension

contributions not be permitted to repudiate their *pension promises.*'" *Id.* at n. 14 (emphasis in original) (quoting Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., S. 1076, The Multi-employer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 44 (Comm.Print 1980)). The Court in *Laborers Health* held that §§ 515 and 502(g)(2) did not provide trust funds with a cause of action to enforce contributions when the employer's refusal to make post-contract contributions violates the National Labor Relations Act. Nothing in the decision affects Congress' express desire that the federal courts be available to enforce breaches of collective bargaining agreements.

Funds to have broad powers when seeking to enforce employer obligations.

## B. *Collective Bargaining Agreement*

We next turn to the collective bargaining agreement that binds Mosbeck, Twiddy and the Union. We note initially that *Schneider* does not hold squarely that the parties to a collective bargaining agreement can compel arbitration of employee-benefit trust fund contribution disputes by inserting plain language of such an intention in the agreement. The Court in *Schneider* hinted that the parties to a collective bargaining agreement may be incapable of compelling an employee-benefit trust fund to arbitrate unless the parties to the collective bargaining agreement are precisely the same parties that are privy to the relevant trust agreements. *See* 466 U.S. at 374, 104 S.Ct. at 1850. The rationale for this potential limitation on the power of a collective bargaining agreement presumably is that employee-benefit trust funds are responsible for protecting the interests of many employers and beneficiaries who are parties to different collective bargaining agreements. *Id.* at 373–74, 104 S.Ct. at 1849–50; *see also Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir.1988). A collective bargaining agreement that severely limits the rights of a trust fund to seek collection of employer contributions might unfairly prejudice employers whose collective bargaining agreement is not so favorable. For that reason, the Court in *Schneider* left open the question of whether a collective bargaining agreement, even a carefully drafted one, can bind an employee-benefit trust fund to arbitration.

As was the case in *Schneider*, we need not decide this difficult issue. Contrary to the conclusion of the district court, we do not believe that the plain language of the relevant collective bargaining agreement manifests an intent to require the trustees of the Trust Funds to submit contribution disputes to arbitration. The collective bargaining agreement states that "[t]he Agreements and Declarations of Trust between the parties hereto under which Welfare, Retirement and Training Fund contributions are being administered *are hereby continued in full force and effect* for the term of this Agreement." Article III, section 3 of the Area Agreement (emphasis supplied). We must assume, therefore, that the parties to the collective bargaining agreement were aware of the language in the trust agreements that allowed the trustees of the Trust Funds to bring civil actions seeking contributions. The parties expressed an intention that those agreements should continue "in full force and effect." *Id.* In our view, this is significant evidence of an intention that the Trust Funds not be bound by arbitration.

Various sections in Article XIII of the collective bargaining agreement do refer to arbitration of contribution disputes. However, those sections are expressly addressed to the parties to the collective bargaining agreement, and not to the Trust Funds or its trustees. For example, section 3 of Article XIII says that the "Joint Arbitration Board shall have jurisdiction to conduct bargaining negotiations covering all disputes, ... including Welfare, Retirement and Training Fund contributions, *that might arise between employers and employees....*" Article XIII, section 3 of the Area Agreement (emphasis supplied). Section 4 of Article XIII says that "[a]ll disputes, ... including Welfare, Retirement and Training Fund contributions, must be arbitrated, and the decision of the Board with respect thereto shall be final and binding *on all parties subject to this Agreement....*" Article XIII, section 4 of the Area Agreement (emphasis supplied). And section 5 of Article XIII reads as follows:

> Should a dispute, grievance, or any wage and hour dispute, including any Trust Fund contributions required under this Agreement, *arise between the parties hereto or between an employer and an employee, or an officer or representative of either party, or between members of one party and members of the other party*, such dispute, grievance, or any wage and hour dispute, including any Trust Fund contributions required under this Agreement, shall immediately be submitted in writing to the respective President and Business Manager of the

parties hereto with a copy to the Joint Arbitration Board.

Article XIII, section 5 of the Area Agreement (emphasis supplied).

None of the above provisions states in plain language an intention to override the provisions of the trust agreements that allow the Trust Funds to bring civil actions to enforce contributions. All of the above passages only apply to the parties to the agreement itself, and thereby exclude the Trust Funds and its trustees. In *Schneider*, the relevant collective bargaining agreement required arbitration of any "differences that arise *between the Company and the Union or any employee of the Company* as to the meaning or application of the provisions of this agreement." 466 U.S. at 374, 104 S.Ct. at 1850 (emphasis in original). But because the trust funds and its trustees were not mentioned in this provision, the Court refused to infer that the parties intended to bind the trust funds. A similar result obtains here. Moreover, as we discussed above, the parties to the collective bargaining agreement were aware of the trust agreements. Nevertheless, the collective bargaining agreement expressed an intention to continue those agreements "in full force and effect." Article III, section 3 of the Area Agreement. Because the collective bargaining agreement so plainly incorporates the trust agreements, we cannot say that the parties to the collective bargaining agreement intended to bind the Trust Funds to arbitration.

The intention of the parties also is reflected in the fact that the collective bargaining agreement does not clearly allow the Trust Funds or its trustees to access the arbitration mechanism. In *Schneider*, the Court noted that the collective bargaining agreement did not permit the trust funds to access the arbitration process outlined in the collective bargaining agreement. In the Court's view, this implied that there was no intention for the trust funds to be required to use arbitration. The Court said:

> [W]e will not engage the unlikely inference that the parties to these agreements intended to require the trustees to rely

on the Union to arbitrate their disputes with the employer. Without that inference, as petitioners' concede, there is no basis for assuming that the parties intended to require arbitration of disputes between the trustees and the employer.

466 U.S. at 376, 104 S.Ct. at 1851 (footnote omitted). In the instant case, the only parties who clearly can access the arbitration process are the parties to the collective bargaining agreement, employers and employees, or an officer or representative of either party.

Mosbeck and Twiddy have argued, and the district court agreed, that the trustees of the Trust Funds can access the arbitration mechanism because the trustees are representatives of the Union for purposes of collecting contributions. However, in light of Supreme Court precedent, we cannot accept that argument. In *NLRB v. Amax Coal Co.*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), the Court emphasized that the sole obligation of trustees of employee-benefit trust funds is to protect the interests of beneficiaries, regardless of the effect on employers or unions. The Court expressly said:

> ERISA vests the "exclusive authority and discretion to manage and control the assets of the plan" in the trustees alone, and not the employer or the union. 29 U.S.C. § 1103(a).
>
> The legislative history of ERISA confirms that Congress intended in particular to prevent trustees "from engaging in actions where there would be a conflict of interest with the fund, such as representing any party dealing with the fund." S.Rep. No. 93–383, pp. 31, 32 (1973). In short, the fiduciary provisions of ERISA were designed to prevent a trustee "from being put into a position where he has dual loyalties, and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." H.R.Conf.Rep. No. 93–1280, *supra*, at 309.

*Id.* at 333–34, 101 S.Ct. at 2796 (footnote omitted). In *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), the Court

said that the interests of employee-benefit trust funds are often inconsistent with the interests of a union. The Court said:

A trustee's duty extends to all participants and beneficiaries of a multiemployer plan, while a local union's duty is confined to current employees employed in the bargaining unit in which it has representational rights. The breadth of the trustee's duty may result in a very different view of the special situations that may exist in any single unit, and, as we recognized in *Schneider*, a union's arrangements with a particular employer might compromise the broader interests of the plan as a whole....

*Id.* at 576, 105 S.Ct. at 2843.

Based on these authorities, the Trust Funds and its trustees cannot be viewed as representatives of the Union. As the Supreme Court suggested in *Central States*, we can foresee many instances in which the interests of the Union and the interests of the Trust Funds would be directly adverse with respect to the desire to enforce employer contributions. For example, the Union might desire to allow a company to forego trust contributions when the company is threatening to close down a plant due to economic difficulties. In such a situation, the Trust Funds' objectives and the Union's objectives would be in direct conflict. Consequently, we cannot say that the Trust Funds are the representatives of the Union for purposes of enforcing employer contributions. The collective bargaining agreement therefore does not appear to allow the Trust Funds to access the arbitration mechanism.

### Conclusion

For the above reasons, we respectfully disagree with the district court that the collective bargaining agreement demonstrates a plain intention to require the Trust Funds to resort to arbitration in order to enforce contributions. The decision of the district court therefore is reversed and the case is remanded.

REVERSED AND REMANDED.