Lee **JAFFEE, John J. Bailey, Jr., William B. Riggs, William Mattes, Richard Catalano, Carmen Gambino, Alan Mitchell, Stanley Mucha, Charles Timmel, and Lawrence Jankowski, as Trustee of the Chicago Graphic Arts Health and Welfare Fund, Chicago, and Local 458–3M, Graphic Communications International Union, AFL–CIO, Plaintiffs,**

v.

**SHANIN COMPANY, Defendant.**

No. 90 C 05672.

United States District Court, N.D. Illinois, E.D.

Feb. 13, 1991.

Michael H. Slutsky, Wesley G.S. Kennedy, Jeffrey Smith Wheeler, Cotton, Watt, Jones & King, Chicago, Ill., for plaintiffs.

Laurence J. Bolon, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiffs, Trustees of the Chicago Graphic Arts Health and Welfare Fund ("Fund") and Local 458–3M of the Graphic Communications International Union, AFL–CIO ("Union"), brought this action seeking to collect $2,451.66 allegedly owed to the Fund by the defendant, The Shanin Company ("Shanin") as a result of failing to make payments on behalf of a person employed by Shanin. Shanin has moved to compel arbitration and dismiss the two-count complaint against it on the ground that this action is governed by a provision in a labor agreement which requires arbitration of disputes concerning obligations undertaken in the agreement. For the following reasons we grant Shanin's motion.

Shanin's obligation to make payments to the Fund arise from Article 15 of the collective-bargaining agreement entered into between the Union and employers. Article 15 also appears to create the Fund. There is no evidence of any separate trust agreement. Shanin readily admits that it has not made the payments at issue, but argues that it is under no obligation to do so in this instance. Shanin contends that the employee in question is a "part-time" employee. Accordingly, Shanin maintains that the collective bargaining agreement does not require payments to the fund for such employees. Therefore, whether the agreement requires payment for such employees is central issue in this case.

Shanin argues that both the Fund and the Union are bound by Article 26, Procedure for Disputes, to submit the resolution of such a question to arbitration. Section 26.1 states that "[i]n the event of any disagreement or dispute in any Company, arising out of the application or interpretation of this contract" the parties will resolve the dispute by arbitration. In response, the Fund and the Union contend that the provision upon which Shanin relies is not applicable to this dispute. They maintain that the contractual provision relied on by Shanin only requires arbitration of grievances brought by the employees or the Union, not by the Fund. They then point to Section 15.3 of the agreement which they contend specifically reserves the trustees' rights to collect delinquent accounts, granting them the "right to take whatever action they

deem necessary to collect payment...." [1] As framed by the parties, the question we must therefore consider on the motion to dismiss is simply one of contract interpretation as to whether the parties intended the Fund to be bound by the arbitration provision in cases such as this one. The controlling law in this area is found in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), and *Local Union 597 v. Mosbeck Indus. Equip., Inc.*, 856 F.2d 837 (7th Cir.1988).

■ Before turning to a discussion of those cases, however, we observe that the plaintiffs' opposition to the motion to dismiss is predicated on the argument that the Fund is not contractually bound by the arbitration clause, by virtue of Section 15.3. But the Fund is not the only plaintiff in this case, the Union is a plaintiff as well, and the plaintiffs expressly acknowledge that the Section 26.1 requires the Union to submit to arbitration of its grievances. Even assuming the Fund is not bound by the agreement to submit to arbitration, the plaintiffs have cited to no legal or contractual authority that would excuse the Union's contractual obligation to arbitrate the dispute.[2] Thus, at the very least, a dismissal of this action would be warranted pending arbitration of the Union's claim against Shanin, since such arbitration would lead to resolution of the issues presented here. We need not rely on this as our sole basis for dismissing the case, however, because we find that the agreement binds the Fund to the requirement that contract interpretation disputes be submitted to arbitration.

■ *Robbins* and *Local Union 597* set forth the framework for deciding under what circumstances an employee benefit trust fund will be subject to an arbitration clause in a collective bargaining agreement.[3] In *Schneider*, the Supreme Court determined that there is no presumption in favor of arbitration in disputes between employers and employee-benefit trust funds. The court reasoned that the policy goal of peaceful labor relations which created the presumption would not be served by applying it to trust funds since they did not have the damaging "economic weapons" of strikes or lockouts. *Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849. The court also addressed the trust's status as a third-party beneficiary under the collective-bargaining agreement and the rule of construction that "the promisor may assert against the beneficiary any defense that he could assert against the promisee if the promisee were suing on the contract." *Id.* at 370, 104 S.Ct. at 1848. The court concluded that such a "mechanical" approach was inappropriate since collective bargaining agreements are not "typical third-party beneficiary contract[s]." *Id.* at 371 n. 11, 104 S.Ct. at 1848 n. 11. Instead, the court framed the relevant inquiry as being "whether the parties ... intended to condition the trustees' contractual right to seek judicial enforcement of the trust agreement on exhaustion of the arbitration procedures set forth in the collective-bargaining agreements." *Id.* at 371, 104 S.Ct. at 1849. The Seventh Circuit emphasized these principles in *Local 597*: "*Schneider* stands for the proposition that courts must carefully examine the pertinent trust and collective bargaining agreements to determine whether parties intended to arbitrate disputes between trust funds and employers." 856 F.2d at 840.

In both *Schneider* and *Local 597* the courts found that the parties had not in-

---

**1.** The plaintiffs also maintained that the Federal Arbitration Act provides no independent basis for compelling arbitration. We disregard this point since Shanin has not argued that the Federal Arbitration Act provides an independent basis for compelling arbitration.

**2.** The Union might have, but did not, rely on Section 15.5 of the agreement which provides, similar to Section 15.3, that "The Union may also take whatever action they deem advisable if the Employer is delinquent in payments under this section...." In any event, our analysis with respect to the Fund's reliance on Section 15.3 would equally apply to any reliance by the Union on Section 15.5, which reliance, as we discuss below, is misplaced.

**3.** Neither the plaintiffs nor the defendant cited these cases, or any other authority for that matter, in support of their respective positions. Instead, they singularly relied upon the terms of the collective bargaining agreement.

tended under the circumstances for the trustees to submit to arbitration before being able to sue in federal court. *Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849; *Local 597*, 856 F.2d at 843. In *Schneider*, there were two separate agreements that governed the relationship between the parties: a collective bargaining agreement and a trust agreement that was incorporated by reference through the collective bargaining agreement. The trust agreement gave the trustees the power to take *"any* legal proceedings [that they] in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions." 466 U.S. at 372, 104 S.Ct. at 1849 (emphasis in original) (citations omitted). The court found it significant that the trust agreement did not contain language conditioning the exercise of that authority on exhaustion of the arbitration requirement found in the collective bargaining agreement. *Id.* at 373, 104 S.Ct. at 1849–50.

Since the trust agreement clearly gave the trustees the right to sue, the court looked to the collective bargaining agreement for language that might establish an intent that the trustees were to be bound by its arbitration clause. However, such language was not to be found. Instead, the arbitration clause was narrowly written so as to apply only to "differences that arise *between the Company and the Union or any employee of the Company* as to the meaning or application of the provisions of this agreement." *Id.* at 374, 104 S.Ct. at 1850 (emphasis supplied by the court). This wording supported the argument that the trustees were not to be included in the arbitration clause requirement. Moreover, the petitioners in *Schneider* conceded that the trustees did not have access to the arbitration process directly, but rather would have to rely on the Union to arbitrate their disputes with the employer. *Id.* at 375, 104 S.Ct. at 1850. The court found this position unreasonable. *Id.*, 104 S.Ct. at 1850. In addition, the court believed that since the trust fund was one of the nation's largest and received contributions from employers pursuant to a variety of different collective bargaining agreements it would have been "unreasonable to infer that these parties would agree to subordinate [the interest of all parties represented by the fund] to whatever arbitration procedures might be required by a particular employer's collective bargaining agreement." *Id.* at 373–74, 104 S.Ct. at 1850. Accordingly, the Court ruled that the parties had not intended the trustees to be bound by the arbitration clause and were thus free to bring suit in federal court. *Id.* at 376, 104 S.Ct. at 1851.

In *Local 597*, the Seventh Circuit also reviewed a case involving both a collective bargaining agreement and a trust agreement that was incorporated by reference through the collective bargaining agreement. The trust agreement gave the trustees the power to "take such steps, including the institution and prosecution of, or the intervention in, any proceeding ... as may be necessary or desirable to effectuate the collection of such employer contributions." 856 F.2d at 840. The court found that this language "unambiguously" granted the trustees the right to bring a civil action for contribution and in no way evidenced an intent to require such disputes to be submitted to arbitration. *Id.* at 840.

The court then looked to the collective bargaining agreement for language that might establish an intent that the trustees be bound by the arbitration clause of the agreement. No such language was found. Instead, the collective bargaining agreement stated that "[t]he Agreements and Declarations of Trust between the parties ... are *hereby continued in full force and effect* for the term of this agreement." *Id.* at 841 (emphasis supplied by the court). The court found this to be "significant evidence of an intention that the Trust Funds not be bound by arbitration." *Id.*

In *Local 597*, there was a section of the collective bargaining agreement that arguably supported the contention that the parties intended for the trust fund to be bound by the arbitration agreement. That section stated:

Should a dispute, grievance, or any wage and hour dispute, including any Trust Fund contributions required under this

Agreement, *arise between the parties hereto or between an employer and an employee, or an officer or representative of either party, or between members of one party and members of the other party,* such dispute, grievance, or any wage and hour dispute, including any Trust Fund contributions required under this Agreement, shall immediately be submitted in writing to the respective President and Business Manager of the parties hereto with a copy to the Joint Arbitration Board.

*Id.* at 841–42 (emphasis supplied by the court). However, the court found that this provision was "expressly addressed to the parties to the collective-bargaining agreement, and not to the Trust Funds or its trustees." *Id.* at 841. The court stated that this was not the type of plain language needed "to override the provisions of the trust agreements that allow the Trust Funds to bring civil actions to enforce contributions." *Id.* at 842. The court additionally concluded from this language that the Trust Fund did not have access to the arbitration process, further supporting the inference that they were never intended to be bound by it. *Id.* at 843. Accordingly, the court held that the parties had not intended the trustees to be bound by the arbitration clause and therefore could bring civil actions to enforce contributions. *Id.*

The facts of the present case differ significantly from those in both the *Schneider* and *Local 597* cases, and compel the opposite result. In the present case, there is only one document to be interpreted, the collective bargaining agreement. There is no separate trust agreement. All of the Union's, Fund's and employers' rights, duties and obligations with respect to the trust fund are laid out in the collective bargaining agreement as is the mandatory arbitration clause. It also appears that the Fund receives contributions only from those employers who are subject to this collective bargaining agreement. This ne-

gates one of the Court's points of reasoning in *Schneider*, that the parties would not have intended for the trust fund to be subject to the terms of many differing collective bargaining agreements. 466 U.S. at 375, 104 S.Ct. at 1850. Furthermore, since it appears that only those people subject to the agreement have an interest in the fund, this also negates the concern raised by the Court over the legality of using a collective bargaining agreement to force an independent trust fund to submit to arbitration. *Id.* at 373–74, 104 S.Ct. at 1850.[4]

In both *Schneider* and *Local 597*, the arbitration clauses were written very narrowly, causing the courts to conclude that the trust funds did not have access to the arbitration system. This fact was significant in the determination that the parties never intended for the trusts to submit the disputes to arbitration. *Schneider*, 466 U.S. at 374, 104 S.Ct. at 1850; *Local 597*, 856 F.2d at 841. In the present case however, the arbitration clause is written in much more broadly. The first subdivision of Article 26, Section 26.1, states that "[i]n the event of *any* disagreement or dispute in *any* Company, arising out of the application or interpretation of this contract, the following steps shall be followed." (emphasis added). Nothing about this language suggests that the Fund, expressly made party to the agreement, would not have recourse to the arbitration process. Indeed, to the contrary, this subdivision strongly suggests that the Fund should be required to submit to arbitration.

Section 26.1 then lists in subsections (a) through (e) the step-by-step procedure for dispute resolution starting at the most basic level. Subsections (a) through (d) outline what attempts should be made at resolution before arbitration is sought. These provisions contain narrow references to the Union, employers and employees that support the inference that these pre-arbitration procedures were not intended for use by the Fund. Subsection (e), however, which

**4.** Both *Schneider* and *Local 597* left open the question whether contractually requiring trustees to submit their disputes with the employer to arbitration would be prohibited as a matter

of law. *See Local 597*, 856 F.2d at 841. The plaintiffs have not raised this as an issue in opposition to the motion to dismiss.

deals specifically with arbitration, is cast in broader terms. That subsection states that "[t]he cost of any arbitration shall be borne equally by both *parties* and the decision of the Arbitrator, however, [sic] selected, shall be binding on both *parties*" (emphasis added). Although not conclusive on the issue, the terms of Article 26 do not foreclose application to the Fund.

We now look to the other pertinent provisions of the agreement, for further evidence of intent. As stated earlier, Article 15 establishes the rights, duties and obligations of all parties concerned with respect to the trust fund, and grants certain powers to both the Fund and the Union. Section 15.3 grants the Trustees of the fund "the right to take whatever action they deem necessary to collect payment...." It is upon this section that the Fund claims the right to bring this action in federal court without having to first submit to the arbitration process. This phrase is very similar to the ones found in *Schneider* and *Local 597* which helped convince the court that the parties had not intended those trustees to be subject to the arbitration agreement. *Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849; *Local 597*, 856 F.2d at 840. Had this clause been the only one before us, we might have been persuaded that the Fund need not submit this dispute to arbitration. When read in its entirety, however, Article 15 evidence supports the conclusion that the matter of interpretation at issue in this case was intended by the parties to be the subject of arbitration.

Section 15.3 deals exclusively with the Fund's power to enforce the collection of payments that are "required under [the] section." Yet this dispute deals with the threshold question whether or not payments for part-time employees are in fact required. Shanin thus contends that Section 15.3 cannot be invoked by the Fund since it has not yet been settled whether the defendant has failed to make *required* payments. The significance of this distinction is made clearer when considered in light of a similar provision in Article 15, Section 15.5, which applies to the Union's power to enforce the collection of delin-

quent contributions. Section 15.5 grants the Union the power to "take *whatever* action they deem advisable if the Employer is *delinquent* in payments under this section, including the right to *terminate this Agreement* or to order the employees to *cease work* until satisfactory settlement is made [and] the Employer agrees that he will *not operate any equipment of his shop*" (emphasis added). This section literally gives the Union the power to shut down an entire operation when the employer becomes delinquent on its required payments to the Fund. No reasonable employer would agree to such a provision without an understanding that "delinquent" meant that the employer *undoubtedly* owed the money, but was refusing to pay it. The means toward assuring that understanding under this agreement is arbitration, since the question involved is clearly a "dispute ... arising out of the ... interpretation of the contract." If arbitration is required to settle such a question before the Union can invoke its drastic remedies under Section 15.5, as we believe it must, we find no basis in the agreement to exempt the Fund from settling the question in like manner before invoking its range of remedies.

Therefore, we reject the plaintiffs' contention that the arbitration provision does not apply in this situation simply because the language in Article 15 contemplates the bringing of a civil action by the Fund to recover payments. If we accepted this argument, logic would demand that we also accept the argument that Union at this point of the dispute now has the power to order a shut-down pursuant to the other provisions of Article 15. Indeed, given the lack of any pertinent distinction between the Union and the Fund with respect to the enforcement of payments, in order to read Article 15 in a consistent manner, if Section 15.5 does not apply until the dispute over the terms of the contract have been settled, neither should Section 15.3.

Accordingly, we find that the parties intended for disputes dealing with whether payment to the fund is required for certain employees should be decided by arbitration. Only then, after the arbitrator has decided

that the payments are owed by the employer, would the Fund have the right to take the employer to court and the Union have the right to order a shut down of the business in order to enforce the collection of payments. This interpretation is not only the most reasonable one, but it also places all of the various sections of the collective bargaining agreement in harmony with one another.

### CONCLUSION

For the foregoing reasons, we dismiss this complaint. It is so ordered.