In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 00-1112 & 00-1975

LABORERS' PENSION FUND and LABORERS' WELFARE
FUND OF THE HEALTH AND WELFARE DEPARTMENT OF
THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT
COUNCIL OF CHICAGO AND VICINITY,

*Plaintiffs-Appellees,*

*v.*

BLACKMORE SEWER CONSTRUCTION, INCORPORATED,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 4909—**Ruben Castillo,** *Judge.*

ARGUED MAY 17, 2001—DECIDED JULY 24, 2002

Before HARLINGTON WOOD, JR., KANNE and ROVNER,
*Circuit Judges.*

ROVNER, *Circuit Judge.* Blackmore Sewer Construction,
Inc. (hereafter "Blackmore") employs a shotgun approach in
this appeal of a grant of summary judgment in favor of
Laborers' Pension Fund and Laborers' Welfare Fund of the
Health and Welfare Department of the Construction and
General Laborers' District Council of Chicago and Vicinity
(hereafter "the Funds"). We conclude that all of Blackmore's

arguments miss the broad side of the barn in this appeal, and we affirm.

## I.

The Funds are large, multi-employer pension, health and welfare funds. Blackmore was a long-time contributing employer to the Funds, but in March 1998, Blackmore suddenly ceased submitting reports and contributions to the Funds. The Funds brought suit under Section 515 of the Employment Retirement Security Act of 1974 ("ERISA") and Section 301 of the Labor Management Relations Act ("LMRA") to recover unpaid contributions and to force Blackmore to submit reports on which the Funds relied to administer their accounts. *See* 29 U.S.C. § 1145 and 29 U.S.C. § 185. The Funds, acting as an agent for the Construction and General Laborers' District Council of Chicago and Vicinity (hereafter "the Union") also sought recovery of union dues owed by Blackmore under a collective bargaining agreement with the Union.

We begin by considering the contracts on which the Funds base their claims. On August 15, 1991, Blackmore entered into a collective bargaining agreement (hereafter "the Agreement") with the Union. The original term of the Agreement ran through May 31, 1995, but the Agreement provided that Blackmore would be bound to successive agreements unless it provided the Union with notice of its intent to terminate the Agreement:

> This Agreement shall remain in full force and effect through the 31st day of May, 1995 and shall continue thereafter unless there has been given not less than sixty (60) days nor more than ninety (90) days from the expiration date written notice by registered or certified mail by either party hereto of the desire to modify and amend this Agreement through Negotiations. In the absence of such notice the EMPLOYER and the UNION

> agree to be bound by the area-wide negotiated contracts with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contract.

R. 18, Ex. A, ¶ 9. Blackmore does not dispute that it never gave this notice, and Blackmore thus became bound to two successor agreements, one that covered the time period from June 1, 1995 through May 31, 1998, and one that began on June 1, 1998 and covered the time period involved in this case. Although contribution rates changed with the successive agreements, the duties and obligations of the participating employers, at least as they relate to this case, remained the same.

Each Agreement bound Blackmore to Declarations of Trust establishing the Funds, and set forth Blackmore's contribution obligations into the respective Funds:

> The EMPLOYER agrees . . . to become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if (he) (it) had signed the original copies of the Trust Instruments and amendments thereto. . . .

> The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare and Pension Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

R. 18, Ex. A, ¶ 3.

A master collective bargaining agreement, which was incorporated into Blackmore's shorter memorandum agree-

ment with the Union, established the contribution rates, and also obligated Blackmore (and other employers) to produce their books and records to the Funds on request so that the Funds could determine compliance with the Agreement. Blackmore never terminated its participation in the Funds, and for six and a half years, it remained a contributing employer, regularly submitting a monthly contribution report and paying contributions at the prevailing contractual rates. With each monthly report, Blackmore signed a statement further binding itself to the then current collective bargaining agreement as well as the respective trust agreements:

> **EMPLOYER'S WARRANTY AND ACCEPTANCE:**
> The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi-Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the trust agreements governing Laborer's Pension and Welfare, et al. and accepts all of the terms thereof with the intention of providing benefits to its laborers.

R. 17, Ex. C. Blackmore signed this statement repeatedly, made contributions and submitted reports as it was obliged to do under the various agreements. In March 1998, Blackmore ceased submitting reports and contributions.[1]

The Funds brought suit on August 7, seeking to audit Blackmore's books and records and to recover all delinquencies. The district court characterized the case as a routine

---

[1] All dates referenced hereafter are in 1998 unless otherwise noted.

ERISA collection action and, in an Order dated August 17, set the case on an expedited discovery and trial schedule. Discovery was to be completed by November 30, and the parties were to be ready for trial on five days' notice any time after November 30. When Blackmore failed to answer or otherwise plead in a timely fashion, the district court entered a default judgment in favor of the Funds on October 14. Blackmore subsequently moved to vacate the default, and the court granted that motion on November 10. The court again ordered that discovery be closed November 30, and set a trial date of December 14. On November 19, the Funds moved for summary judgment on liability only and sought an order compelling an audit to determine the amount of the delinquent contributions. Blackmore responded with a demand for arbitration and a motion to stay the case pending the arbitration. The court denied the motion to stay pending arbitration. Blackmore responded to the motion for summary judgment and served a Request for Admissions on the Funds on November 25. On November 30, the district court entered judgment in favor of the Funds on liability and ordered Blackmore to submit to an audit. Following the audit, the Funds moved for judgment in a sum certain. Blackmore opposed that motion. On December 29, 1999, the district court entered judgment in the amount of $78,106.54, which represented unpaid contributions and union dues, liquidated damages, interest, costs, and attorney's fees. The Funds subsequently sought an adjustment to the award of attorney's fees, which the district court granted in part. Finally, the district court granted the Funds' motion for a turnover order pursuant to a citation served on the Suburban Bank of Barrington. Blackmore appeals.

## II.

Blackmore raises several challenges to the district court's judgment in favor of the Funds. First, Blackmore maintains

that the Funds failed to respond to Requests for Admission served on the Funds on November 25, and that the Funds' silence must be construed as an admission of all of the allegations contained therein. In an adjunct argument, Blackmore maintains that its Requests for Admission were not untimely under the District Court's discovery order because requests for admission are not items of discovery and thus were not subject to the court's discovery cutoff date. Second, Blackmore contends that the trial court erred in resolving against Blackmore the question of whether Blackmore had evidenced an unequivocal intent to be bound by a collective bargaining agreement negotiated by a trade association of which Blackmore was not a member and which Blackmore had not authorized to act on its behalf. Third, Blackmore faults the district court for relying on the signed monthly reports which contained a statement binding Blackmore to future collective bargaining agreements because Blackmore maintains that it made a mistake of fact in signing these documents. Fourth, Blackmore posits that the district court abused its discretion and denied it due process when it refused to allow Blackmore to respond to the Funds' motion for a turnover order. Fifth, Blackmore objects to the amount of attorney's fees awarded the Funds, claiming the court made no finding regarding the reasonableness of the fees claimed. Finally, Blackmore contends that the contracts in question were subject to the Federal Arbitration Act.

### A.

We will address the issues related to the Requests for Admission first because many of Blackmore's arguments depend on the outcome of these issues. Blackmore served its Requests for Admission on the Funds on November 25. The district court had previously set a discovery cutoff date of November 30 and a trial date of December 14. Federal Rule of Civil Procedure 36 provides, in relevant part, that mat-

ters set forth in a request for admission are deemed admitted unless "within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admissions written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed. R. Civ. Pro. 36(a). Rule 29, in turn, provides:

> Unless otherwise directed by the court, the parties may by written stipulation . . . modify other procedures governing or limitations placed upon discovery, except that stipulations extending the time provided in Rules 33, 34, and 36 for responses to discovery may, if they would interfere with any time set for completion of discovery, for hearing of a motion, or for trial, be made only with the approval of the court.

Fed. R. Civ. P. 29. The district court found that any discovery served on November 25 was untimely in light of the November 30 discovery cutoff date. *See* Transcript of Proceedings before the Honorable Ruben Castillo, November 30, 1998 (hereafter "Tr."), at 27-28. The court thus ruled on the Funds' motion for summary judgment without considering the Funds' failure to respond to Blackmore's Requests for Admission.

Blackmore spends an inordinate amount of time arguing in its brief that its Requests for Admission are not technically discovery devices and therefore are not subject to the discovery cutoff date set by the district court. This is a curious argument given that Blackmore itself characterized the Requests for Admission as discovery in its argument before the district court. Indeed, at the hearing on the Funds' motion for summary judgment, Blackmore argued to the district court in a circular and frivolous manner that its discovery "was timely served. We've received no response be-

cause they haven't had time to respond." Tr. at 2-3.[2] Black-more did not argue below that its Requests for Admission were timely because they were not discovery and not subject to the discovery cutoff date until it responded to the Funds' Motion for Judgment in a Sum Certain nearly a year later. It is improper to now argue that Requests for Admission filed fewer than 30 days before the *trial* date, much less the discovery cutoff date, were timely filed. Blackmore does not claim that the Funds stipulated in writing to a shorter response time, and Blackmore points to no order from the district court allowing Rule 36 Requests for Admission that would interfere with both a trial date and a discovery cutoff date, in contravention of Rule 29. Instead, Blackmore asks us to impose an obligation on a party to respond to a Request for admissions after judgment had been entered. If we follow Blackmore's argument to its ultimate conclusion, the Funds theoretically would have remained obligated to respond to the Requests for Admission after a trial verdict in favor of the Funds. No matter whether Rule 36 requests for admission are discovery or not, Blackmore did not timely serve them in this case, and the district court was free to disregard them.

**B.**

Blackmore's argument regarding its lack of "unequivocal intent" to be bound by any collective bargaining agreement negotiated after 1995 is perhaps even more curious than its Rule 36 argument. Blackmore relies on *Moriarty v.*

---

[2] We need not decide today whether requests for admission are a discovery device or should be characterized otherwise. The requests filed here were untimely no matter how they are characterized, and the district court did not abuse its discretion in so finding. We note for future consideration that Rule 29 seems to contemplate that requests for admission are a discovery device.

*Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 (7th Cir. 1998), for the proposition that an employer may not be held liable under a collective bargaining agreement unless the employer expressed an unequivocal intention to be bound by the group action in collective bargaining. Blackmore correctly states the general rule that an employer will not be held to the terms of a collective bargaining agreement negotiated between a union and a multi-employer association unless the employer has expressed an unequivocal intent to be bound. *Moriarty*, 155 F.3d at 865. But Blackmore ignores our ensuing analysis in *Moriarty* of what factors will evidence an unequivocal intent to be bound. Signing the final agreement that has been negotiated certainly qualifies as conclusive evidence that the employer intended to be bound, and Blackmore concedes it signed the agreement that bound it through May 31, 1995. That agreement also bound Blackmore to subsequent area-wide negotiated contracts unless either party gave notice of its intent to withdraw from the agreement within sixty to ninety days of the termination date for the agreement. Blackmore gave no such notice. Moreover, Blackmore continued to submit contributions and reports for almost three years after it claims it was no longer obliged to do so. In *Moriarty*, we held that an employer's intent to be bound can be established from the employer's conduct in adhering to the terms of the collective bargaining agreement. *Moriarty*, 155 F.3d at 867. "For instance, if an employer has contributed to a fund or has filed reports declaring that it has done so even if it has not, such evidence may be considered in determining its intent to be bound by the agreement." *Id*. Here, Blackmore not only filed reports and submitted contributions, it signed a statement each month declaring its continued intention to be bound to the terms of the current collective bargaining agreement. R. 17, Ex. C. In the face of this overwhelming evidence of its intent to be bound to the collective bargaining agreement, Blackmore offers self-serving statements that it made a mistake of fact when it filed its reports and contributions

from 1995 through 1998, and that it never intended to be bound. Blackmore's belief that it would not be bound to agreements it signed and then repeatedly reaffirmed is unavailing. A unilateral mistake will relieve a party of its obligations under a contract only under certain limited circumstances not present here. *See Restatement (Second) of the Law of Contracts*, § 153. No reasonable jury could find that Blackmore was not bound to agreements it signed, reaffirmed, and complied with for a period of three years before discovering its "mistake." We thus reject Blackmore's second and third arguments. The district court was correct in finding that Blackmore was bound to make the contributions to the Funds.

## C.

Blackmore next maintains that the district court abused its discretion and denied it due process when it refused to allow Blackmore to respond to the Funds' motion for a turnover order. The Funds had directed a citation to discover assets to the Suburban Bank of Barrington where Blackmore had an account. The response to the citation was signed by an agent of Harris Bank. When the Funds presented their motion for a turnover order based on this citation response, Blackmore asked for three weeks to respond to the motion. Transcript of Proceedings before the Honorable Ruben Castillo, March 28, 2000, at 2. The district court inquired, "What could possibly be the response to this motion?" Counsel for Blackmore responded:

> Your Honor, I believe there's some question as to the bank. The citation was served on Suburban Bank of Barrington in Cook County, and Harris Bank out of Lake County responded to it. I haven't done a full investigation, but Mr. Mantynband would like that time to respond. In addition . . .

*Id.*[3] The court halted the discussion and granted the turn-over order. Blackmore now contends that the district court's refusal to grant it time to investigate this discrepancy was an abuse of discretion and a denial of due process. The Funds respond that Harris Bank owns the Suburban Bank of Barrington and that Blackmore surely knew this since Blackmore had an account at that bank. The Funds also point out that the court's turnover order was directed to the Suburban Bank of Barrington, not Harris Bank, and that if Blackmore had no funds at the Suburban Bank of Barrington, the order would be nullity. The Funds characterize Blackmore's request for time to investigate as another stalling tactic to avoid payment of its obligations. The district court apparently agreed.

Blackmore's counsel may well have not known at the time of the hearing that Harris Bank and Suburban Bank of Barrington are, in all relevant respects, the same entity. But the ownership of banks is a matter of public record, and a simple phone call or a quick search of the internet would have resolved this issue for Blackmore conclusively. We may take judicial notice of matters of public record, and we exercise that authority here to note that the Suburban Bank of Barrington is a branch office of Harris Bank. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999); www.harrisbank.com/personal/loc_ill.html; www3.fdic.gov/idasp//main.asp. A quick search of the public record would have shown that absolutely nothing was amiss in the response to the citation. Although counsel may not have had a chance to conduct such a search before the hearing in the district court, there is no reason to have failed to do so before raising this wholly irrelevant issue on appeal.

---

[3]  Mr. Mantynband, the lawyer usually appearing for Blackmore, was on vacation at the time of this hearing. Another attorney from his office covered the hearing for Blackmore.

Blackmore has never raised a real question about the appropriateness of the involvement of Harris Bank in responding to the citation. We are at a loss to understand why Blackmore vigorously appealed a factual issue that could have been easily resolved by looking to information readily available in the public domain. It cannot be gainsaid that this was information about Blackmore's *own* bank. The district court's refusal to grant three weeks to determine what we determined in a matter of minutes was neither an abuse of discretion nor a violation of due process.

### D.

We can quickly dispose of Blackmore's fifth argument, that the district court erred in granting attorney's fees without making a finding as to the reasonableness of the fees requested. "ERISA provides for a mandatory award of reasonable attorney's fees when a plan fiduciary prevails in an action to collect delinquent contributions." *Moriarty v. Svec*, 233 F.3d 955, 963 (7th Cir. 2000), *cert. denied*, 532 U.S. 1066 (2001) and 533 U.S. 930 (2001); 29 U.S.C. § 1132(g)(2)(D). We review the district court's award of fees for abuse of discretion. *Svec*, 233 F.3d at 963. Blackmore complains that the district court made no specific finding relating to the reasonableness of the fees requested and that the affidavit supporting the award of fees did not address any of the factors a court should consider in determining whether fees are reasonable. Blackmore also objects that the district court declined to hold a hearing on fees as Blackmore requested. The Funds reply that they submitted an affidavit detailing the fees they charged and Blackmore submitted no contrary evidence. The Funds also point out that the district court reduced certain of the fees requested by the Funds, finding they were excessive.

Once again, we are puzzled by the position Blackmore takes on appeal. After reviewing the December 29, 1999

minute order in which the district court made its first award of fees, we determined that, in the required appendix to its opening brief, Blackmore omitted the reverse side of the page where the district court stated the reasons for its ruling. *See* Consolidated Brief and Consolidated Appendix of Appellant Blackmore Sewer Construction Company, Ex. 3. On reviewing the copy of the order provided in the certified record on appeal, we note that the district court in fact made a specific finding as to reasonableness:

> Finally, the Court finds that the requested damages and attorneys' fees are fair and reasonable under the circumstances of this case, which involved repeated assertions of invalid defenses.

Minute Order, December 29, 1999. This finding is certainly consistent with Blackmore's behavior on appeal, which involves the repeated assertion of frivolous issues. In light of the district court's finding, the Funds' affidavit, and Blackmore's complete failure to submit any evidence to the contrary, we find the district court did not abuse its discretion in its award of fees to the Funds. Because Blackmore's appeal of this issue is frivolous, and because Blackmore failed to attach the full copy of the district court's order in the appendix to its brief as required by Circuit Rule 30, we issue a rule to show cause why Blackmore should not be sanctioned.[4]

**E.**

Finally, Blackmore argues that the district court erred in refusing to stay the case pending arbitration. The district

---

[4] Blackmore also objected to the amount of the judgment because it included contributions for three employees that Blackmore maintains were excluded from the agreements because they were teamsters not laborers. Blackmore supplied no factual support for this claim below or on appeal, and we reject it outright.

court denied Blackmore's motion to stay the proceedings and later commented that the demand for arbitration and motion to stay proceedings were "so far afield as to have any support in law or in fact as to constitute, I believe, a sanctionable filing the more I have reflected on that." Tr. at 23. We share the district court's frustration. In support of its claim for arbitration, Blackmore relies on a provision in the contract between the Union and the association that relates to resolving disputes concerning the interpretation or application of the agreement between an employer and the union. Of course, this dispute is not between the employer and the union; it is between the Funds, a third party beneficiary of the contract, and an employer. The Funds are not parties to the contract under which Blackmore demands arbitration. In addition to this gaping factual insufficiency, Blackmore's demand for arbitration fails for an important legal reason as well. The Supreme Court held that where neither trust agreements nor collective bargaining agreements evidence any intent to condition the contractual right of trustees to seek judicial enforcement of a trust provision on exhaustion of arbitration procedures contained in collective bargaining agreements, a failure to arbitrate a contribution claim against an employer under the trust agreements cannot bar suits seeking judicial enforcement of the trust terms against the employer. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 376 (1984). This rule has been applied here in the Seventh Circuit in circumstances quite similar to the instant case. *See Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Indus. Equip., Inc.*, 856 F.2d 837 (7th Cir. 1988). Blackmore makes no attempt to distinguish these cases or provide any factual basis for its claim to arbitrate. We therefore find the district court was correct to deny Blackmore's motion to stay the proceedings pending arbitration.

## III.

For all the reasons stated above, we affirm the judgment of the district court. There is no merit to any of Blackmore's arguments. We have selected the most egregious examples of the frivolity of this appeal, and issue an order to show cause under Rule 38 why Blackmore should not be sanctioned for filing a frivolous appeal. Blackmore has 14 days from the issuance of this opinion to respond to the order to show cause.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*